122 P.3d 796

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Clifford DANIELS, Defendant–Appellant.**

No. 24484.

Supreme Court of Hawai'i.

Oct. 21, 2005.

T. Stephen Leong, Honolulu, for defendant-appellant.

Mark Yuen, Deputy Prosecuting Attorney, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by NAKAYAMA, J.

Defendant-appellant Clifford Daniels (hereinafter "Daniels") appeals from the July 31, 2001 judgment of the family court of the first circuit, the Honorable Michael D. Wilson presiding, convicting Daniels of abuse of a family or household member in violation of Hawai'i Revised Statutes (HRS) § 709–906

(1999),[1] sentencing him to serve a term of 90 days' imprisonment and placing him on probation for two years. On appeal, Daniels argues that: (1) the trial court erred in (a) failing to require the prosecution to present facially non-discriminatory reasons for its peremptory challenges and (b) denying Daniels' motion for a mistrial due to the discriminatory use of peremptory challenges by the State of Hawaiʻi (hereinafter "the prosecution") (a so-called Batson violation, per *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *State v. Batson*, 71 Haw. 300, 788 P.2d 841 (1990)); (2) the trial court erred in instructing the jury to clarify its verdict rather than acquitting Daniels when the jury returned both "guilty" and "not guilty" verdict forms, inasmuch as Daniels should have been acquitted because there was no objective evidence as to which verdict was rendered first; and (3) double jeopardy bars a retrial (a) due to the erroneously denied *Batson* motion and (b) because the jury erroneously returned both "guilty" and "not guilty" verdict forms. Upon review of the record, we conclude that (1) the trial court erred in failing to require the prosecution to present facially non-discriminatory reasons for its peremptory challenges, and (2) reprosecuting Daniels would not constitute double jeopardy. Accordingly, we vacate the family court's July 31, 2001 judgment of conviction and remand the matter for a new trial.

1. HRS § 709–906 (1999) provides, in relevant part, that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or household member ... For the purposes of this section, 'family or household member' means ... persons jointly residing in the same unit."

2. Complainant testified that Daniels kept clothes in her apartment, would spend the night, and was domiciled with her at the time of the incidents in question. Complainant further testified that in the course of an argument on February 21, 2001, Daniels grabbed the complainant from behind, placed his arms under her arms, then brought his hands together behind her head, forcing her head down towards her chest (a grappling technique known as a "full nelson"), at which point she bit him. Daniels then pushed her against a wall repeatedly and struck her on both sides of her face. The complainant found herself on the ground with Daniels holding her

## I. BACKGROUND

The present case arises out of a domestic dispute between Daniels, a caucasian male, and Joyce George, (hereinafter "complainant" or "George") occurring between February 28 and March 1, 2001. The incidents were reported to the police and Daniels was arrested. The prosecution filed a complaint charging Daniels with one count of abuse of a family or household member in violation of HRS § 709–906, *see supra* note 1. Evidence was adduced at Daniels' jury trial, which commenced May 24, 2001 and concluded on May 29, 2001, providing factual support for the charge, *i.e.* that George and Daniels were joint residents in the same unit and Daniels abused George.[2]

In the course of jury selection, the prosecution exercised its three peremptory challenges against three caucasian males. Two of the challenged jurors, John Olson and John Morgan, were among the original twelve; the other, Arnold Schulmeister, was drawn to replace a juror peremptorily challenged by the defense.[3] All three jurors were passed for cause, and the answers of at least two of the veniremen, Morgan and Olson, contained nothing to suggest any prejudice or lack of understanding of a juror's duties.[4] Daniels' attorney made a *Batson* challenge and moved for a mistrial.

> [Defense counsel]: Your Honor, we'd like to make a Batson challenge at this time and move for a mistrial. The Prose-

mouth and pinching her nose, preventing her from breathing. Daniels subsequently released her and began to choke her by placing one arm around her neck and pulling that arm with his other arm.

3. The racial categorizations at issue are subjective and based on the attorneys' impressions. Daniels' attorney characterized the three challenged jurors as caucasian and neither the court nor the prosecution offered any comment on the characterization.

4. The answers of the third peremptorily challenged caucasian male, Arnold Schulmeister, arguably reflect some degree of confusion, though not necessarily prejudice or lack of understanding of a juror's duties, and not necessarily to a greater degree than the answers provided by other prospective jurors not challenged.

cutor has strucken (sic)—all three persons are male and caucasian, and Defendant is male and caucasian. And she struck Mr. Olson, Mr. Schulmeister, and Mr. Morgan.

The Court: Ms. Suzuki.

[Deputy Prosecuting Attorney (DPA)]: Your Honor, that is not the reason why I struck those particular people.

The Court: All right. Your motion is denied. You can return to your seat.

Daniels' attorney later revisited the *Batson* challenge during a recess following jury selection:

[Defense counsel]: Your Honor, as a preliminary matter, I would like to revisit the Batson challenge, Your Honor. According to—my understanding of Batson, I make a preliminary showing and then the State is supposed to make res [sic] neutral statements as to why they challenged each of the three jurors.

And all the prosecutor indicated at side bar was that that wasn't the reason why she excluded them. We don't know what the reasons are and whether or not they are res [sic] neutral.

The Court: I leave to the government their response to your motion. I have denied it.

Ms. Suzuki, if you want to supplement your record, you may do so at this time. Otherwise, we'll move along. Is there anything else you'd like to add at this time?

[DPA]: No, Your Honor, except for the fact that there was—first of all, I strenuously deny that it was based on race as the reason why I excluded the three jurors. In fact, one of—so that's not the reason behind it. And in fact, even the last bump for the alternate, he was Asian. Race is not a factor, Your Honor. There also is a caucasian juror who is on the—in the jury.[5]

5. The remaining caucasian juror referred to was a female.

6. Although federal courts have described the trial court's determination whether the opponent of a peremptory challenge party has made a *prima facie* case of discriminatory purpose as, in general, a finding to be reviewed deferentially, *see, e.g., Tolbert v. Page,* 182 F.3d 677, 681–85 (9th. Cir.

The Court: Thank you. We'll move on now to the State's motion in limine.

The trial proceeded. At the conclusion of the trial, the jury foreman signed both the "guilty" and "not guilty" verdict forms and returned them to the court. The court excused the jury, explained the situation to counsel, permitted counsel to review the forms, and said "So, counsel, what I will do is return these forms to the jury and instruct them to clarify what their verdict is." Defense counsel signified his assent to this procedure. At the conclusion of this procedure, the jury returned a guilty verdict. The jury was polled and each member confirmed that they agreed with the verdict.

Judgment was entered on July 31, 2001. Daniels was sentenced to serve a term of 90 days' imprisonment and placed on probation for two years. Notice of appeal from the judgment, as authorized by HRS §§ 641–11 and 571–54, which allow an appeal from the judgment in a family circuit court criminal case, was timely filed on August 20, 2001, within the thirty-day period for appeal prescribed by Hawai'i Rules of Appellate Procedure Rule 4(b)(1).

## II. STANDARDS OF REVIEW

■ In reviewing an appeal based on a criminal defendant's denied *Batson* motion, where such motion was denied without the trial court compelling the prosecution to proffer a non-discriminatory explanation for the disputed peremptory challenge, we step into the trial court's position, review the same trial record, and redecide the issue; because our determination of 'whether the trial record indicates that the criminal defendant had established a *prima facie* case of discriminatory purpose' is a question of law, the review is *de novo*. *See State v. Batson,* 71 Haw. 300, 301–02, 788 P.2d 841, 842 (1990); *see also Dan v. State,* 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).[6]

1999), the standard of review applicable here is the *de novo* standard applied in *State v. Batson.* In *State v. Batson,* we disregarded the trial court's finding, examined the record, and, with particular attention to certain enumerated factors, made a *de novo* determination with respect to whether the trial record indicated that the defendant had raised an inference that the prose-

When the trial court is faced with an incomplete or ambiguous verdict and reinstructs the jury to complete the verdict, we review the trial court's actions for an abuse of discretion. *See State v. Manipon*, 70 Haw. 175, 177, 765 P.2d 1091, 1093 (1989).

## III. DISCUSSION

### A. The trial court erred by failing to require the prosecution to offer non-discriminatory explanations for its exercise of its peremptory challenges to remove three caucasian males from the jury.

Daniels argues that the trial court erred in denying his motion for a mistrial due to the facially discriminatory use of peremptory challenges by the prosecution. Daniels is correct. Our precedent demonstrates that the trial court erred in not requiring the prosecution to offer non-discriminatory explanations for its exercise of its peremptory challenges.

It is impermissible to exercise peremptory challenges in a manner which discriminates on the basis of such categories as race, religion, ancestry, or gender. *See generally State v. Batson*, 71 Haw. 300, 788 P.2d 841 (1990); *State v. Levinson*, 71 Haw. 492, 795 P.2d 845 (1990). A trial court's constitutional review of peremptory strikes follows a three-step procedure.

First, the defendant must make out a *prima facie* case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. *Batson v. Kentucky*, 476 U.S. at 93–94, 106 S.Ct. 1712. To establish the *prima facie* case, the defendant must make a showing that the challenged juror is a member of a protected group, that the opposing party exercised a peremptory challenge to remove the juror, and that the facts and circumstances surrounding the exercise of the peremptory challenge raise an inference of discrimina-

tion. *Cooperwood v. Cambra*, 245 F.3d 1042, 1045–46 (9th Cir.), *cert. denied*, 534 U.S. 900, 122 S.Ct. 228, 151 L.Ed.2d 164 (2001). The rule in Hawai'i, announced in *State v. Batson*, is that whenever the prosecution exercises its peremptory challenges so as to exclude entirely from the jury all persons who are of the same protected group [7] as the defendant, and that exclusion is challenged by the defense, there will be an inference that the exclusion was motivated by an impermissible discriminatory purpose,[8] and the prosecutor must, to the satisfaction of the court, provide a category-neutral explanation [9] for the peremptory challenges. 71 Haw. at 302–03, 788 P.2d at 842. In other words, if the effect of the prosecution's exercise of its peremptory challenges is to exclude from the jury all members of the same protected group as the defendant, and the defense raises a *Batson* challenge, the defendant's *prima facie* case is automatically established. *Id.*

Second, once the defendant has made out a *prima facie* case, the burden shifts to the State to explain the exclusion by offering permissible category-neutral justifications for the strikes. *Batson v. Kentucky*, 476 U.S. at 94, 106 S.Ct. 1712. *See also Levinson*, 71 Haw. at 499, 795 P.2d at 850 ("[W]hen a prima facie case of the use of peremptory challenges by the defense to discriminate against potential jurors because of their race, religion, sex, or ancestry is established, it is incumbent upon the court to require a non-discriminatory explanation of the challenge, which satisfies it that the challenge is not based on a prohibited discriminatory basis, before excusing the juror."). At this second step, a prosecutor cannot satisfy his or her burden of production by merely denying that he/she had a discriminatory motive or by merely affirming his/her good faith. *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). As the United States Supreme Court explained earlier this year, "when illegitimate grounds

cution's exercise of its peremptory challenge was motivated by an impermissible discriminatory purpose. 71 Haw. at 301–02, 788 P.2d at 842.

7. In *State v. Batson*, "ethnical minority," but the rule in *Batson* has been expanded beyond race

and ethnicity by subsequent controlling precedent.

8. In *State v. Batson*, "racially motivated."

9. In *State v. Batson*, "non-ethnical basis."

like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." *Miller–El v. Dretke*, 545 U.S. ——, 125 S.Ct. 2317, 2332, 162 L.Ed.2d 196 (2005). Where the prosecutor refuses to answer, which the Court has described as "an unlikely hypothetical,"

> "the evidence before the judge would consist not only of the original facts from which the *prima facie* case was established, but also the prosecutor's refusal to justify his strike in light of the court's request. Such a refusal would provide additional support for the inference of discrimination raised by a defendant's *prima facie* case."

*Johnson v. California*, 545 U.S. ——, 125 S.Ct. 2410, 2417 n. 6, 162 L.Ed.2d 129 (2005) (citing *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 111, 47 S.Ct. 302, 71 L.Ed. 560 (1927) (stating that " '[c]onduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character.' ") (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54, 44 S.Ct. 54, 68 L.Ed. 221 (1923))). Hawai'i law goes further: we have held that, where the inference has been established, if the prosecutor refuses to offer a category-neutral explanation for the peremptory challenge, and the trial judge fails to compel an answer, any resulting conviction must be vacated. *State v. Batson*, 71 Haw. at 302, 788 P.2d at 842.

Third, if a category-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination. *Purkett*, 514 U.S. at 767, 115 S.Ct. 1769 (citations omitted); *Levinson*, 71 Haw. at 499, 795 P.2d 845.

■■■ In determining whether an inference that the challenge was motivated by an impermissible discriminatory purpose has been raised, we consider (1) the answers given by the juror to the questions put to him, (2) the delay in exercising the challenge, (3) the colloquy between the court and counsel when the challenge was exercised, (4) the refusal of the prosecutor despite the citation to the court of **[either]** the United States Supreme Court's opinion in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) **[or our opinion in *State v. Batson*, 71 Haw. 300, 788 P.2d 841 (1990)]**, to give a reason for the exercise of the peremptory challenge, and (5) whether the effect of the challenge is to exclude from the panel members of **[a category]** that includes the opponent of the strike.[10] *State v. Batson*, 71 Haw. at 301–02, 788 P.2d 841, 842; *see also Levinson*, 71 Haw. at 499, 795 P.2d at 850. The remedy for a *Batson* violation is vacatur of the judgment of conviction and remand to the trial court for a new trial. *State v. Batson*, 71 Haw. at 301, 788 P.2d at 842.

In this case, the prosecution exercised its peremptory challenges to entirely exclude caucasian males from the jury. Daniels, a caucasian male, challenged the prosecution's exercise of its peremptory challenges on the grounds that the challenged jurors, like the defendant, were caucasian males. The prosecution does not dispute that caucasian males constitute a cognizable *Batson* group.[11]

---

10. The bolded, bracketed language is not in *State v. Batson*, but is either more consistent with current United States Supreme Court case law (*i.e.* the use of "a category" rather than "black") or serves a necessary pragmatic purpose (*i.e.* permitting citation to the decision in the Hawai'i case *State v. Batson* in addition to that in the Supreme Court case *Batson v. Kentucky* ).

11. Other state courts have recognized combined race-gender groups for purposes of the *Batson* analysis. *See, e.g., Commonwealth v. Jordan*, 439 Mass. 47, 785 N.E.2d 368, 377–81 (2003) (collecting cases and holding that caucasian males are a cognizable group); *State v. Shepherd*, 989 P.2d 503, 511 n. 4 (Utah Ct.App.1999) (calling trial judge's assumption that caucasian males are not a protected group "erroneous"); *People v. Garcia*, 217 A.D.2d 119, 120, 636 N.Y.S.2d 370 (N.Y.App.Div.1995), *opinion after remand*, 238 A.D.2d 605, 657 N.Y.S.2d 960 (1997), and *appeal denied*, 90 N.Y.2d 905, 663 N.Y.S.2d 517, 686 N.E.2d 229 (1997) (holding that african-american women "are protected from being peremptorily challenged on a discriminatory basis"); *People v. Motton*, 39 Cal.3d 596, 217 Cal.Rptr. 416, 704 P.2d 176, 181–82 (1985) (holding african-american women to be a "cognizable group"). *But see People v. Washington*, 257 Ill. App.3d 26, 194 Ill.Dec. 854, 628 N.E.2d 351, 355–56 (1993), *cert. denied*, 516 U.S. 875, 116 S.Ct. 203, 133 L.Ed.2d 137 (1995) (refusing to recognize african-american males as a cognizable group) (relying in part on a series of cases

Daniels thus satisfied all of the conditions necessary to trigger the mandatory inference of a discriminatory purpose pursuant to the rule announced in *State v. Batson*. The trial court was therefore required to compel the prosecutor to provide a category-neutral explanation for the peremptory challenges. *Id.* The trial court's failure to do so was error; as in *State v. Batson*, the prosecution's rejection of the chance to explain the suspect challenges necessitates a new trial. *Id.* We therefore vacate the judgment of conviction and remand the matter for a new trial. *Id.*

**B. The trial court's procedure upon receiving inconsistent verdict forms from the jury was not in error.**

 Daniels argues that the trial court erred when, upon receiving both "guilty" and "not guilty" verdict forms from the jury, rather than accepting the "not guilty" verdict the court instead instructed the jury to return to the jury room and clarify their verdict. Daniels' argument is without merit, as our precedent demonstrates that the trial court's procedure was not in error.

 "As long as the jury remains under the direction of the trial court, it is within the court's province to have them render a correct verdict." *State v. Manipon*, 70 Haw. 175, 177, 765 P.2d 1091, 1092 (1989). "The office of the juror is not discharged until the acceptance of the verdict by the court." *Id.* at 178, 765 P.2d at 1093. *See also State v. Lemalu*, 72 Haw. 130, 135, 809 P.2d 442, 445 (1991). In the face of an incomplete or ambiguous verdict, the trial court does not abuse its discretion in instructing the jury to complete the verdict to reflect its decision. *Manipon*, 70 Haw. at 177, 765 P.2d at 1093.

In this case, at the conclusion of the trial, the jury foreman signed both the "guilty" and "not guilty" verdict forms and returned them to the court. The court excused the jury, explained the situation to counsel, permitted counsel to review the forms, and said "So, counsel, what I will do is return these forms to the jury and instruct them to clarify what their verdict is." Defense counsel signified his assent to this procedure. At the conclusion of this procedure, the jury returned a guilty verdict. The jury was polled and each member confirmed that they agreed with the verdict.

The court did not err in finding the return of two coextensive mutually-exclusive verdict forms to be incomplete or ambiguous, nor was its instruction to the jury in error. As in *Manipon*, the trial court refused to accept an ambiguous verdict, and reinstructed the jury to the satisfaction of counsel. The jury's return of a guilty verdict, with which all twelve polled jury members agreed, strongly suggests that even if error occurred, there is no real possibility that such error could have contributed to the defendant's conviction.

**C. Reprosecuting Daniels would not constitute double jeopardy.**

Daniels argues that to reprosecute him would constitute double jeopardy. This argument is wholly without merit. As the Superior Court of Pennsylvania explains:

> "Since the *Batson* decision, hundreds of state and federal courts have applied *Batson*, and, when *Batson* violations have occurred after jeopardy has attached, those courts have remanded cases for further evidentiary proceedings, reversed convictions, and remanded for new trials. No state or federal court has ever held that a prosecutor's *Batson* violation, no matter the circumstances, constitutes prosecutorial misconduct of such a degree as to implicate double jeopardy principles."

*Commonwealth v. Basemore*, 875 A.2d 350, 353 & n. 7 (Pa.Sup.Ct.2005) (discussing the interplay between discriminatory peremptory challenges and double jeopardy, and collecting cases).

 Nor does a trial court's nonacceptance of the verdict form and subsequent reinstruction to the jury violate a defendant's protections against double jeopardy. *Manipon*, 70 Haw. at 177–78, 765 P.2d at 1093. As in *Manipon*, the trial court refused to accept an ambiguous verdict, and reinstruct-

subsequently overruled by *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (banning gender-based discriminatory challenges)).

ed the jury to the satisfaction of counsel. This procedure did not violate Daniels' protections against double jeopardy.

## IV. CONCLUSION

Based on the foregoing, the family court's July 31, 2001 judgment of conviction is vacated and the matter remanded for a new trial.

