SLIP OPINION

Cite as 2017 Ark. 273

# SUPREME COURT OF ARKANSAS

No. CR–16–659

| | |
|---|---|
| | **Opinion Delivered:** October 5, 2017 |
| JONATHAN ANTONIO WOODS | |
| APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-14-40] |
| V. | |
| STATE OF ARKANSAS | HONORABLE SAM POPE, JUDGE |
| APPELLEE | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Jonathan Woods was convicted of the kidnapping and murder of his girlfriend, Samantha Poole. The state sought the death penalty, but a Drew County jury instead sentenced Woods to life in prison without the possibility of parole for murder plus forty years imprisonment for kidnapping. On appeal, Woods argues that the trial court erred in denying his challenges to the State's use of peremptory strikes during jury selection. We affirm.

Woods argued during jury selection and now on appeal that the State's decision to use peremptory strikes against the only three black potential jurors in the pool was motivated by unconstitutional racial bias of the sort prohibited by the United States Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986). In order to identify improper racial strikes under *Batson*, this court has delineated a three-step process. First, the party challenging the strike must present facts sufficient to "raise an inference of purposeful

SLIP OPINION

discrimination." *MacKintrush v. State*, 334 Ark. 390, 398, 978 S.W.2d 293, 296 (1998). This requires demonstrating "(1) that the strike's opponent is a member of an identifiable racial group, (2) that the strike is part of a jury-selection process or pattern designed to discriminate, and (3) that the strike was used to exclude jurors because of their race." *Id*. Second (and only if the challenger has succeeded on the first step), the trial court must request that the striking party provide a race-neutral explanation for the strike. The explanation "must be more than a mere denial of discrimination or an assertion that a shared race would render the challenged juror partial to the one opposing the challenge." *Id*. The explanation, however, "need not be persuasive or even plausible" so long as it is race-neutral. *Id*. Third, the trial court must determine "whether the strike's opponent has proven purposeful discrimination" based on the evidence and argumentation presented. *Id*. at 399, 978 S.W.2d at 296. If the strike's opponent presents no further evidence of discrimination beyond the initial prima facie case, the court must make its decision solely on the information already presented and its assessment of the credibility of those who presented it. *Id*. In reviewing the result of this three-step process, we will reverse the trial court only if its determination is clearly against the preponderance of the evidence. *See, e.g.*, *Williams v. State*, 338 Ark. 97, 111, 991 S.W.2d 565, 572 (1999).

In this case, the state made use of ten peremptory strikes. Woods challenges the three strikes used against the black potential jurors: Ronia Young, Garrett Sheets, and Valerie Simmons. These were the first, sixth, and tenth strikes, respectively. For each of these strikes, the defense counsel requested race-neutral explanations, and the trial court prompted the State to provide them.

SLIP OPINION

For Ronia Young, the State's race-neutral explanation focused on three actions by Young: (1) failing to return a jury questionnaire, (2) self-identifying as belonging to a faith group that believes the death penalty to be morally wrong, and (3) asserting that she did not feel her role was to be "judge or jury." As the State argued at the time of the challenge to the strike, the trial court's request for a race-neutral explanation of the peremptory strike against Young was premature. As the first juror to be struck overall, there was simply no basis on which to argue that the strike was part of a "process or pattern" of discriminatory strikes. Demonstration of this process or pattern is necessary to the first step of the *Batson* inquiry, and only successful completion of the first step triggers the need to provide a race-neutral explanation. Because the trial court need not have reached steps two or three of the *Batson* inquiry at all for the strike against Young, Woods's argument on appeal regarding the adequacy of the trial court's consideration of these steps is unavailing.

For both Garrett Sheets and Valerie Simmons, the State's race-neutral explanation involved the potential jurors' answering "B" when asked which of options "A" or "B" below more closely matched their views on the death penalty:

> A: I believe the death penalty is appropriate in some capital cases and I could return a verdict resulting in death in the proper case; or
> B: Although I do not believe that the death penalty should be imposed, as long as the law provides for it, I could assess the death penalty in the proper set of circumstances.

Sheets and Simmons were among a group of eight individuals (the remaining six were nonblack) who answered "B" to the question; the prosecution used peremptory strikes against all of them. In addition, Sheets indicated multiple times in both his questionnaire and during jury selection that he suffered from posttraumatic stress disorder and mental

illness. Simmons stated in her questionnaire that she did not believe the public "should have the power to kill."

Unlike with Young, with these later strikes Woods could have at least arguably presented a satisfactory prima facie case to require the State to provide race-neutral explanations. Woods relies on *Purkett v. Elem*, 514 U.S. 765 (1995), and this court's frequent citation to that case for the proposition that ending the *Batson* inquiry after the second step and simply accepting the State's race-neutral explanation is reversible error. *See, e.g.*, *Weston v. State*, 366 Ark. 265, 271, 234 S.W.3d 848, 853 (2006). Applying that rule to these circumstances, however, misunderstands both *Purkett* and this court's precedent. *Purkett* held that courts may not combine steps two and three of the *Batson* inquiry by importing a plausibility requirement to dismiss facially race-neutral explanations without further consideration. *Purkett* was, in fact, an attempt to reinforce the ultimate rule—favorable to the State in this case—that the opponent of the allegedly discriminatory strike bears the burden of proving discriminatory intent. *See Purkett*, 514 U.S. at 768. What Woods contends was flippant treatment of his challenges was instead an appropriate application of the *Batson* inquiry. As we invariably state when reciting the *Batson* steps, when the opponent of the strike fails to provide any additional argumentation or evidence to demonstrate discriminatory intent, the trial court has no option but to rely on the prima facie showing, the race-neutral explanation, and its own assessment of the credibility of the parties when making a ruling. *See, e.g.*, *Weston*, 366 Ark. at 271, 234 S.W.3d at 853.

Here, Woods did not present any additional evidence or arguments after the court elicited the State's race-neutral explanations for Sheets and Simmons. Given the absence of

evidence of discriminatory intent available, we cannot say that the trial court's decision to deny both challenges was clearly against the preponderance of the evidence. Indeed, we have affirmed peremptory strikes based on "B" answers to the exact question cited by the prosecution as race-neutral justification for potential jurors. *See, e.g.*, *Weston*, 366 Ark. at 274–75, 234 S.W.3d at 856. While the qualified opposition to the death penalty expressed in the provided answer may not have sufficed to strike jurors for cause, it was a sufficient race-neutral explanation to justify the State's use of one of its limited number of peremptory strikes. *Id.*

As required by Ark. Sup. Ct. R. 4-3(i) (2017), the record has been examined for reversible error. None has been found.

Affirmed.

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.