NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11933

COMMONWEALTH vs. ANTHONY ROBERTSON.

Suffolk.        February 9, 2018. - August 31, 2018.

Present: Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Homicide. Robbery. Firearms. Cellular Telephone.
    Identification. Jury and Jurors. Fair Trial.
    Constitutional Law, Search and seizure, Jury, Fair trial,
    Fair trial. Search and Seizure, Warrant, Affidavit.
    Practice, Criminal, Capital case, Motion to suppress,
    Warrant, Affidavit, Jury and jurors, Empanelment of jury,
    Challenge to jurors, Voir dire, Fair trial.



    Indictments found and returned in the Superior Court
Department on September 27, 2011.

    A pretrial motion to suppress evidence was heard by Patrick
F. Brady, J., and the cases were tried before him.


    Elizabeth A. Billowitz for the defendant.
    Kathryn E. Leary, Assistant District Attorney (David J.
Fredette, Assistant District Attorney, also present) for the
Commonwealth.


    CYPHER, J.  The defendant, Anthony Robertson, appeals from

his convictions of murder in the first degree, armed robbery,

and carrying a firearm without a license.  He argues that he did not receive a fair trial because eyewitnesses improperly identified him in court; the prosecutor misstated evidence in closing argument; the judge erred in declining to question jurors about potential racial bias; the Commonwealth improperly excluded black men from the jury in violation of Batson v. Kentucky, 476 U.S. 79 (1986), and Commonwealth v. Soares, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979); cellular telephone (cell phone) records that should have been suppressed were introduced; hearsay testimony was improperly admitted; a police officer offered extensive irrelevant testimony about the condition of the apartment where the defendant was arrested; and voluntary manslaughter is the degree of guilt most consonant with justice.  The defendant also submitted a separate brief, pursuant to Commonwealth v. Moffett, 383 Mass. 201 (1981), arguing that the jury instructions and the prosecutor's closing argument were erroneous and trial counsel was ineffective.[1]

Because the defendant's right to a fair trial as provided by Batson, supra, and Soares, supra, was violated, we vacate the

---

[1] "Because we find no error, we need not address the Commonwealth's contention that our decision in Commonwealth v. Moffett, 383 Mass. 201, 208, 216-217 (1981), was not intended to permit 'hybrid representation,' and that we should not consider these claims of error." Commonwealth v. Brown, 462 Mass. 620, 634 n.14 (2012).  We remind the Commonwealth that it is often difficult for defense counsel to coordinate filings with a client who is incarcerated.

verdicts and remand for a new trial.  We address other claims of error that are likely to recur upon retrial.

Background.[2]  On June 26, 2011, the victim, Aaron Wornum, was with two friends, Erik Hicks and Jason Heard.  The victim, who was wearing a necklace with a gold cross, was driving his friends to Hicks's home, through the Dorchester neighborhood in Boston.  On the way, the victim said he had to meet a friend to pick up some money that the friend owed to him.  The victim stopped the vehicle in a parking lot and spoke to the defendant on a cell phone about where to meet.  The victim drove to a nearby street and spoke again to the defendant on the cell phone about where to find him.  The defendant and his longtime friend, Emmitt Perry, walked around the corner from a nearby street.  The victim then told the defendant on the cell phone that the victim saw him.  The victim told Hicks and Heard that he saw the person he was meeting and got out of the vehicle.

The victim, the defendant, and Perry spoke briefly and then started arguing, and the defendant or Perry grabbed the victim's shirt.  The victim backed away from the defendant and Perry.  Hicks got out of the vehicle to help the victim.  The defendant drew a gun.  The victim then ran to other side of the vehicle, leaving Hicks closest to gun.  While the defendant pointed the

---

[2] We recite the facts as the jury could have found them, viewed in the light most favorable to the Commonwealth, and reserve certain details for later discussion.

gun at Hicks, Perry searched Hicks's pockets, taking a pack of cigarettes and two cell phones. The victim asked the defendant what he was doing and to not do this, repeatedly calling the defendant "Ant."[3] The defendant fired the gun in the direction of the victim. The defendant and Perry ran around the vehicle, toward the victim, and the defendant fired the gun again. The victim was on the ground when the gun was fired for a third time. At some point during this altercation, Heard ran from the vehicle. Emergency personnel quickly responded to the scene. The victim was pronounced dead at the hospital that evening.

The defendant and Perry fled and went to the house of Tinea Jones. Jones was the mother of one of Perry's children and a friend of the defendant since childhood. According to Jones, the defendant looked scared and paranoid. He took a shower and asked for a ride to a nearby public transit station. A friend of Jones picked up the defendant and drove him to the station.

Discussion. 1. Cell site location information evidence. The defendant argues that the judge erroneously denied his motion to suppress historical cell site location information (CSLI). He alleges that the warrant used to acquire this data lacked probable cause because the underlying affidavit was defective.

---

[3] The Commonwealth introduced testimony that the defendant's nicknames are "Ant," "Little Ant," and "Animal."

The affidavit included the following information. Boston police officers were called to the corner of Sumner Street and East Cottage Street at 9:20 P.M. on June 26, 2011. The victim was lying on the ground, bleeding from the neck and head, suffering from several gunshot wounds. He was pronounced dead twenty-five minutes later at a local hospital. Two witnesses -- identified as witnesses nos. 1 and 2 -- told officers that on the victim's way to drive them home, the victim made and received several cell phone calls making plans to meet someone. Both witnesses stated that as the victim drove down Sumner Street, two males came into view, and the victim said, "I see you now," stopped the vehicle, and got out. The witnesses provided descriptions of both men. After a very brief time, the men began pushing the victim back toward the vehicle, and both witnesses saw a gun in the hand of one of the men. Witness no. 1 got out of the vehicle to offer aid and saw the man with the gun shoot the victim. The defendant matched the initial descriptions provided by the two witnesses, and later, in a photographic array, witness no. 1 identified the defendant as the man with the gun. The victim's cell phone records revealed that a telephone number ending in 4076 (number 4076) appeared in incoming and outgoing calls seven times in the hours leading up to the shooting, and was the number from which the last call was made that was received by the victim moments before the

shooting.  During the investigation, a source identified number 4076 as the defendant's telephone number.

We have "applied the requirement of probable cause to the defendant's historical CSLI because . . . where the information at issue covered a two-week period, analysis of this information was akin to tracking the defendant's movements for an extensive time period, and constituted a search under art. 14" of the Massachusetts Declaration of Rights.  Commonwealth v. Augustine, 472 Mass. 448, 453-454 (2015) (Augustine II), citing Commonwealth v. Augustine, 467 Mass. 230, 254-255 (2014) (Augustine I), S.C., 470 Mass. 837 and 472 Mass. 448 (2015).  See Carpenter v. United States, 138 S. Ct. 2206, 2212, 2216-2217 (2018) (seven days of CSLI constituted search under Fourth Amendment to United States Constitution).  When considering the sufficiency of a search warrant application, our review "begins and ends with the 'four corners of the affidavit'" (citation omitted).  Commonwealth v. Cavitt, 460 Mass. 617, 626 (2011).  "In determining whether an affidavit justifies a finding of probable cause, the affidavit is considered as a whole and in a commonsense and realistic fashion. . . ."  Id.  The affidavit should not be "parsed, severed, and subjected to hypercritical analysis."  Commonwealth v. Donahue, 430 Mass. 710, 712 (2000).  We evaluate whether the affidavit underlying the warrant application satisfies the probable cause standard required by

art. 14 de novo.  Commonwealth v. Foster, 471 Mass. 236, 242 (2015).

When reviewing the sufficiency of a search warrant application for historical CSLI, we determine whether, based on the affidavit in support of the search warrant, (1) the magistrate had a substantial basis to conclude that a particularly described offense has been, is being, or is about to be committed; and (2) the CSLI being sought will produce evidence of such offense or will aid in the apprehension of a person who the applicant has probable cause to believe has committed, is committing, or is about to commit such offense. Commonwealth v. Estabrook, 472 Mass. 852, 870 (2015). Inferences drawn from the affidavit must be reasonable and possible, but no showing that the inferences are correct or more likely true than not true is required.  See Commonwealth v. Matias, 440 Mass. 787, 794-795 (2004) (contraband found in trash of multiunit apartment building examined in whole supplied probable cause to conclude that contraband came from defendant's apartment).

The defendant argues that the affidavit was insufficient because it relied primarily on unsourced police information and misrepresented the quality of one of the eyewitnesses as having unequivocally identified the defendant from the photographic array.  However, if the portions of the affidavit to which the

defendant objects were redacted, the remaining facts nevertheless would satisfy the requirements of probable cause.

The affidavit provided two percipient witness accounts of the shooting and stated that police had found the victim suffering from gunshot wounds, thus satisfying the first requirement for the search warrant. See Augustine I, 467 Mass. at 256 (first requirement for search warrant is satisfied when affidavit demonstrates probable cause that "offense has been, is being, or is about to be committed").

The search warrant also fulfils the second requirement. The defendant does not contest the two witnesses' accounts of the victim meeting with the shooter through a cell phone call, nor that the victim's cell phone records identify number 4076 as the telephone number that the victim called just before his death. Had the affidavit only indicated that the victim was on his cell phone immediately before the murder, speaking with one of the individuals with whom he likely met, and that the last seven calls in his cell phone records were between his cell phone and number 4076, that evidence would be sufficient to establish probable cause to believe the CSLI of the cell phone associated with number 4076 number would provide evidence of the murder. For example, in Commonwealth v. Dorelas, 473 Mass. 496, 503 (2016), the search warrant affidavit stated that the defendant had been using his cell phone to argue with an

individual in the hours leading up to and immediately prior to the shooting.  We held that this information provided a nexus between the shooting and information on the defendant's cell phone, establishing probable cause that it likely contained "evidence of communications both received as well as initiated . . . by the defendant that would link [the defendant] . . . to that shooting."  Id.  Therefore, the motion to suppress was correctly denied.  Id. at 505.

2.  In-court identifications.  The victim's friends who were present at the scene of the shooting, Hicks and Heard, each independently identified a photograph of the defendant as the man who shot the victim.  Each witness signed his name to the back of the defendant's photograph and wrote "possibly."  The defendant argues that the judge, over objection, erred in admitting Hicks's and Heard's in-court identifications because each witness did not make an unequivocal out-of-court identification of the defendant.  The defendant relies on our decision in Commonwealth v. Collins, 470 Mass. 255, 261-262 (2014), which prohibits such identifications.[4]  Collins, however,

_____

[4] The defendant argues, in the alternative, that if we do not apply the holding of Commonwealth v. Collins, 470 Mass. 255, 261-262 (2014), the identifications nonetheless created prejudicial error.  Any analysis of this argument implicates the particular evidence presented to the jury at this trial.  Because we are remanding for a new trial, any consideration of potential prejudicial error would not be meaningful.  We decline to conduct such an analysis in the abstract.

by its own terms, applies prospectively only to trials beginning after the issuance of that opinion.  Id. at 265.  Collins was decided after the defendant's trial concluded; therefore, the defendant does not receive the benefit of that new rule in our assessment of his convictions.

However, upon any retrial, it will be the judge's task to determine the admissibility of the in-court identifications.  See Commonwealth v. Dew, 478 Mass. 304, 315 (2017).  All current case law, including our holding in Collins, may apply to that consideration.

3.  Voir dire questioning.  The defendant, an African-American man, requested that the judge ask potential jurors if the defendant's race would affect the juror's ability to be fair and impartial.  The judge declined, stating that race was not an issue in the case because both the defendant and the victim are African-American.  The defendant argues this was an abuse of discretion because, had the judge asked this question during voir dire, the defendant could have determined "whether a potential juror would be receptive to defense arguments that police prejudice against young African-American men involved in the drug trade negatively affected the quality of the investigation and the ultimate strength of the case."

The judge has "broad discretion" to determine what questions to ask during voir dire.  Commonwealth v. Lao, 443

Mass. 770, 777 (2005).  Unless "there exists a substantial risk of extraneous issues that might influence the jury," the judge is not required to ask any questions beyond those required by G. L. c. 234A, § 67.[5]  Id.  We have held that such a risk exists as a matter of law in trials involving interracial murder,

---

[5] General Laws c. 234A, § 67, requires, among other things, that the judge to ask the following question:

"Upon motion of either party, the court shall, or the parties or their attorneys may under the direction of the court, examine on oath a person who is called as a juror, to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice. . . .  In a criminal case such examination shall include questions designed to learn whether such juror understands that a defendant is presumed innocent until proven guilty, that the commonwealth has the burden of proving guilt beyond a reasonable doubt, and that the defendant need not present evidence on the defendant's behalf. . . .

"To determine whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall, or the parties or their attorneys may, with the permission and under the direction of the court, examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may cause a decision to be made in whole or in part upon issues extraneous to the issues in the case."

In 2016, G. L. c. 234A, § 67, replaced G. L. c. 234, § 28, the statute in effect at the time of the defendant's trial; § 67 contains substantially the same language as that statute did. St. 2016, 36, §§ 1, 4.

interracial rape, and sexual offenses against children. Commonwealth v. Lopes, 440 Mass. 731, 737 (2004). The defendant does not request that we expand that rule, nor do we elect to do so at this juncture. The facts of this case do not fall within those enunciated categories, and the defendant presents nothing to suggest that "extraneous issues" might have influenced the jury. Therefore, the judge did not abuse his discretion when he declined to ask a question about racial bias as requested by the defendant. However, we reiterate that "a motion to have jurors asked about racial prejudice should usually be granted." Commonwealth v. Ramirez, 407 Mass. 553, 555 (1990). Racial bias can, of course, have an impact on juror impartiality, even where the victim and the defendant are of the same race.

4. Batson-Soares challenge. Rule 20 (c) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 889 (1979), permits the Commonwealth and the defendant to exercise peremptory challenges to prevent venire members, declared indifferent by the judge, from being seated on the jury. "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." Swain v. Alabama, 380 U.S. 202, 220 (1965). However, the equal protection clause of the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights place

limitations on the use of peremptory challenges.  See Batson, 476 U.S. at 85-86 ("Exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure"); Soares, 377 Mass. at 486 (art. 12 proscribes "the use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community" in order to guarantee "the right to a jury drawn from a representative cross section of the community").

The defendant argues that the prosecutor impermissibly used peremptory challenges to exclude black men from the jury, in violation of the Fourteenth Amendment and art. 12.  The judge did not find a discriminatory pattern in the prosecutor's peremptory challenges and, as a result, did not inquire about the prosecutor's reasoning.  We review the judge's finding that there was no prima facie showing of a discriminatory pattern for an abuse of discretion.

A judge's evaluation of a Batson-Soares objection follows a three-step process.[6]  First, the burden is on the objecting party

_____

[6] Our three-step process mirrors the procedure in Batson v. Kentucky, 476 U.S. 79, 96 (1986).  See Commonwealth v. Lopes, 478 Mass. 593, 598 (2018).  The majority of other States follow the same process.  See Ex parte Floyd, 191 So. 3d 147, 156 (Ala. 2015); Gottschalk v. State, 36 P.3d 49, 51 (Alaska Ct. App. 2001); State v. Escalante-Orozco, 241 Ariz. 254, 271 (2017); Woods v. State, 2017 Ark. 273, at 1-2; People v. Parker, 2 Cal. 5th 1184, 1211 (2017); People v. Beauvais, 2017 CO 34, ¶ 19;

to make "a prima facie showing of impropriety" that overcomes the presumption of regularity afforded to peremptory challenges. Commonwealth v. LeClair, 429 Mass. 313, 319 (1999). Next, if the judge finds that the objecting party has established a prima facie case, the party attempting to exercise a peremptory challenge bears the burden of providing a "group-neutral" reason

Sells v. State, 109 A.3d 568, 576 (Del. 2015); Johnson v. State, 302 Ga. 774, 779 (2018); State v. Daniels, 109 Haw. 1, 5-6 (2005); State v. Foster, 152 Idaho 88, 91 (Ct. App. 2011); People v. Davis, 233 Ill. 2d 244, 261-262 (2009); Cartwright v. State, 962 N.E.2d 1217, 1220 (Ind. 2012); State v. Mootz, 808 N.W.2d 207, 215 (Iowa 2012); State v. Gray, 306 Kan. 1287, 1300-1301 (2017); Roe v. Commonwealth, 493 S.W.3d 814, 826-827 (Ky. 2015); State v. Crawford, 2014-2153, p. 27 (La. 11/16/16); Elliott v. State, 185 Md. App. 692, 712-713 (2009); Pellegrino v. AMPCO Sys. Parking, 486 Mich. 330, 339 (2010); State v. Wilson, 900 N.W.2d 373, 378 (Minn. 2017); Flowers v. State, 240 So. 3d 1082, 1120 (Miss. 2017); State v. James, 2010 MT 175, ¶ 23; State v. Wofford, 298 Neb. 412, 423-424 (2017); McCarty v. State, 371 P.3d 1002, 1007 (Nev. 2016); State v. Ouahman, 164 N.H. 413, 415 (2012); State v. Thompson, 224 N.J. 324, 339 (2016); State v. Salas, 2010-NMSC-028, ¶ 31; People v. Bridgeforth, 28 N.Y.3d 567, 571 (2016); State v. Waring, 364 N.C. 443, 474-475 (2010); State v. Garnder, 2016 ND 161, ¶ 11; State v. Pickens, 2014-Ohio-5445, ¶ 63; Coddington v. State, 2006 OK CR 34, ¶ 11; State v. Longo, 341 Or. 580, 595-596 (2006); Commonwealth v. Johnson, 635 Pa. 665, 706-707 (2016); State v. Porter, 179 A.3d 1218, 1224-1225 (R.I. 2018); State v. Scott, 2014 SD 36, ¶ 14; State v. Echols, 382 S.W.3d 266, 281-282 (Tenn. 2012); Goode v. Shoukfeh, 943 S.W.2d 441, 445 (Tex. 1997); State v. Harris, 2012 UT 77, ¶ 15; State v. Yai Bol, 2011 VT 99, ¶ 6; Lawlor v. Davis, 288 Va. 223, 230 (2014); Seattle v. Erickson, 188 Wash. 2d 721, 732 (2017); State v. Boyd, 238 W. Va. 420, 434 (2017); State v. Lamon, 2003 WI 78, ¶¶ 27-32; Roberts v. State, 2018 WY 23, ¶ 13. See generally Provost, Excavating From the Inside: Race, Gender, and Peremptory Challenges, 45 Val. U. L. Rev. 307, 355 (2010) ("Connecticut, Florida, Missouri, South Carolina, and the Military Court of Appeals have eliminated the prima facie step [of the Batson test]").

for the challenge.  Commonwealth v. Scott, 463 Mass. 561, 570 (2012).  Finally, the judge then evaluates whether the proffered reason is "adequate" and "genuine."  Commonwealth v. Maldonado, 439 Mass. 460, 464 (2003).  Only if it is both may the peremptory challenge be allowed.

A prima facie showing of impropriety is present when "(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership in that group" (quotation and citation omitted).  Scott, 463 Mass. at 570.  The trial judge evaluates "all of the relevant facts and circumstances" to determine if the objecting party has met that "relatively low bar."  Commonwealth v. Jones, 477 Mass. 307, 322 (2017).

We have never established an exhaustive list of relevant factors, but have long considered concerns such as "the number and percentage of group members who have been excluded," id., and "whether the challenged jurors are members of the same constitutionally protected group as the defendant or the victim," Commonwealth v. Issa, 466 Mass. 1, 9 (2013).  Recently, we noted that "the possibility of an objective group-neutral explanation for the strike or strikes," despite containing elements of the second and third steps of this analysis, "may play a role in the first-step analysis as well."  Jones, supra at 322 & n.25.  See Commonwealth v. Lopes, 478 Mass. 593, 601

(2018) (judge did not err in finding no pattern of racial discrimination where prospective juror's "two significant experiences with the law provided a sufficient and obvious basis for the prosecutor's peremptory challenge").

The challenging party need not show much to satisfy this low burden. Maldonado, 439 Mass. at 463 n.4 (objecting party's burden "ought not be a terribly weighty one"). Indeed, "a single peremptory challenge may be sufficient to rebut the presumption, especially where the challenged juror is the only member of his or her protected class in the entire venire" (quotation and citation omitted). Issa, 466 Mass. at 9. The makeup of the venire can be difficult to assess from the bench given that a judge might not necessarily be able to discern the diversity of the jury pool by looking at the court room. Such difficulty, in part, informs why "we urge judges to think long and hard" before they decide not to require an explanation from the prosecutor for the challenge. Id. at 11 n.14.

The judge may consider whether some members of the group in question have already been seated on the jury, but that is not dispositive. "[T]o place undue weight on this factor not only would run counter to the mandate to consider all relevant circumstances, but also would send the unmistakable message that a[n] [attorney] can get away with discriminating against some [group members] so long as [that attorney] does not discriminate

against all such individuals" (quotation and citation omitted).
Jones, 477 Mass. at 325.

At trial, the defendant objected to two of the
Commonwealth's peremptory challenges. Each time, the judge
found that the defendant did not satisfy his burden in the first
step of a Batson-Soares challenge and therefore did not inquire
about the Commonwealth's reasons for the exercise of the
challenge. When reviewing a judge's decision not to inquire
about a party's reason for exercising a peremptory challenge, we
may consider the absence of a neutral reason apparent in the
record. See Jones, 477 Mass. at 324 ("the possibility that [the
juror] was struck because of her race is heightened by the fact
that the record reveals no race-neutral reason that might have
justified the strike").

The Commonwealth used its second peremptory challenge on
the first black man who was a potential juror.[7] The defendant
objected and defense counsel stated, "My client is a black male
and this is the first black male to come before the court to be
a potential juror." The judge found no prima facie evidence of

---

[7] Although "the numbers considered in isolation are
inconclusive," United States v. Mensah, 737 F.3d 789, 802 (1st
Cir. 2013), it is worth noting that the Commonwealth had only
used one other peremptory challenge at this point (to challenge
a man who had immigrated from India); the defendant, in
contrast, had used six.

impropriety, noting that several "people of color" had already been seated on the jury.

We have often noted that a single peremptory strike can be sufficient to support a prima facie case, especially where the juror is the only member of the venire of the particular group. Issa, 466 Mass. at 9. See Snyder v. Louisiana, 552 U.S. 472, 478 (2008), quoting United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir. 1994) ("[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose"). The judge's reasoning that there was not yet a pattern fails to consider this well-established principle that one peremptory strike can sustain the objecting party's prima facie case. We have also turned a keen eye toward the use of peremptory challenges on jurors who are members of the same protected class as the defendant. Issa, supra.

Here, the Commonwealth used the peremptory challenge on a juror who, after twenty-one other potential jurors came before the court, was the first of the same race and gender as the defendant. The record offers little insight into what potential neutral reason the Commonwealth might have offered. The juror did not answer any questions on his questionnaire that necessitated further discussion, and he affirmed that he could be fair and impartial. See Sanchez v. Roden, 753 F.3d 279, 303 (1st Cir. 2014) ("we do find it significant that the record

fails to disclose any obvious infirmity in [the juror's] background or voir dire answers that would translate to an apparent reason for the Commonwealth's peremptory challenge"). The only additional information about the juror that can be gleaned from this record is that he had two children, ages five and eight. He did not indicate that child care problems would arise if he were seated. The judge's failure to inquire about the Commonwealth's reason for excluding this juror was, alone, insufficient to warrant a new trial.

The defendant raised a second objection to the Commonwealth's use of a peremptory challenge to exclude a man from the Dominican Republic. The defendant objected, and the parties disagreed about the potential juror's race. The Commonwealth argued that the potential juror was "Hispanic" and the defendant argued that he was black. This highlights the challenges of justly administering the mandates of Batson and Soares. "The usual tools we rely on to measure one's ethnicity, primarily name and appearance, are often deceptive." Commonwealth v. Calderon, 431 Mass. 21, 25 n.2 (2000) (dismissing Commonwealth's argument that peremptory challenge of African-American juror was proper because juror was likely not the only racial minority who could have been seated, simply because "other jurors on the panel 'had surnames which could have been Hispanic'"). See Commonwealth v. Garrey, 436 Mass.

422, 428 (2002) (when ruling on defendant's Soares challenge, judge "expressed doubt that the prospective juror was African-American," but nonetheless asked prosecutor to provide reason for her challenge, aiding in our assessment on appeal).

Discerning whether a juror is a member of a particular protected class is a decision that often must be made by the judge immediately during the jury selection. The judge does not have much information with which to make this determination, and there is often little information in the record for the reviewing court to consider. See Commonwealth v. Obi, 475 Mass. 541, 551 (2016) (when analyzing claim defendant used peremptory challenge to improperly exclude Muslim juror, "the judge observed that the juror's headscarf was of a type traditionally worn by Muslim women" and was similar to headscarf worn by Muslim victim, thus providing sufficient evidence of prima facie showing that defense counsel improperly exercised challenge on basis of religion); Commonwealth v. Carleton, 36 Mass. App. Ct. 137, 141-145, S.C., 418 Mass. 773 (1994) (juror surnames may be used as reliable indicia of national origin or ethnicity, but are insufficient to indicate juror's religion).

We confronted an analogous challenge in Commonwealth v. Bastaldo, 472 Mass. 16, 27 (2015), when considering when a judge should instruct the jury about cross-racial identifications. We said, "Because differences in race based on facial appearance

lie in the eye of the beholder, we shall not ask judges to determine whether a reasonable juror would perceive the identification to be cross-racial." Id. Rather, we held "that a cross-racial instruction be given unless all parties agree that there was no cross-racial identification." Id. We now apply a similar approach to peremptory challenges. Consistent with our cautious jurisprudence when analyzing Batson and Soares challenges, where a juror's membership in a protected class is reasonably in dispute, trial judges, in performing the first step of the Batson-Soares analysis, ought to presume that the juror is a member of the protected class at issue.

The judge observed that the potential juror was "lighter skinned than [the defendant]," and without deciding how to consider the juror's race, the judge asked the Commonwealth to respond to the defendant's allegation of a pattern, but did not ask for a neutral explanation for the use of the peremptory challenge.[8] The Commonwealth offered the following response:

> "The court found there was no pattern up until now. This individual came in. He said there were incidents on his record that he didn't tell the court.[9]

---

[8] "[I]t would have been well within the judge's discretion to require an explanation, even without finding a pattern. Such questioning could have facilitated our task on appeal . . . ." Lopes, 478 Mass. at 600 n.6.

[9] This prospective juror had been arrested eleven years prior to the trial for an incident of domestic violence. It appears from the colloquy with the judge that the juror provided that information on his juror questionnaire. It is unclear from

"To be perfectly blunt and I'm going to keep my voice down, he didn't seem like the most intelligent guy. He's like a nice enough guy but he didn't seem all that intelligent.

"And, most importantly, I don't consider him African-American. Whether he has African blood in him or not, I have no idea. He was born in the Dominican, I consider him Hispanic.

". . .

"His client is African-American and the victim in this case is African-American. Okay. That's what the law is. Not, I mean, is every person who was not born in Cambridge, Massachusetts subject to a Soares challenge?

"I mean, that's ridiculous. So, if the court's finding a pattern, I think I've given it a neutral reason for the pattern.

"I'd ask the [c]ourt not to find a pattern at this point."

After the Commonwealth concluded its argument, the judge reiterated that he was "careful not even to inquire" about the Commonwealth's reasons, stating that if he did not find a pattern, he did not have any right to ask for the Commonwealth's

---

the trial record to what "incidents" the Commonwealth was alluding. The juror failed to note on his form that he had a teenage son, but mentioned his child to the judge and did not indicate that jury service could cause any child care problems. Compare Commonwealth v. Issa, 466 Mass. 1, 11 n.13 (2013) ("We do not consider in our analysis the prospective juror's arrest thirteen years earlier in Kansas for criminal trespass, which resulted in his spending forty-eight hours in jail. Where there is nothing in the record to suggest that this experience would have affected the prospective juror in his evaluation of the case, we would not find it reasonable for a prosecutor to rely on this arrest as a basis for challenging a prospective juror, especially where, as here, the prosecutor did not challenge other jurors with similar criminal experiences").

reasons.[10]  The judge ruled that he did not find a pattern so he did not "reach the issue of the truthfulness or the genuineness and the nonracial basis for the challenge."[11]

The judge explained that he did not see a pattern because, in part, there were two black women on the jury.  This reasoning fails for two reasons.  First, the defendant was not challenging

---

[10] This was inaccurate as a matter of current law. Previously, we had required a trial judge to make a determination whether the objecting party had made a prima facie showing of impropriety.  See Commonwealth v. Maldonado, 439 Mass. 460, 463-464 (2003); Commonwealth v. Burnett, 418 Mass. 769, 770-771 (1994); Commonwealth v. Soares, 377 Mass. 461, 490, cert. denied, 444 U.S. 881 (1979).  However, we later recognized that such a finding is implicit where a judge inquires about the neutral reasons for a peremptory challenge.  See Commonwealth v. Carleton, 418 Mass. 773, 774 (1994); Commonwealth v. Matthews, 31 Mass. App. Ct. 564, 569 (1991).  We have since evolved to the current state of the law:  judges have "broad discretion" to seek explanations for peremptory challenges "without having to make the determination that a pattern of improper exclusion exists."  Lopes, 478 Mass. at 598, quoting Issa, 466 Mass. at 11 n.14.

[11] We therefore confine our evaluation to whether the judge abused his discretion when he did not find a pattern, despite the Commonwealth's unsolicited explanation of its ostensibly neutral reasons.  At the time of trial, we had not yet said that the possible existence of a reason that was free from impermissible bias for a peremptory challenge could be a factor in analyzing a pattern, so it is unlikely that the judge considered those reasons when finding no pattern.

Even if we consider the Commonwealth's proffered reasons, our analysis is not altered.  The claim that the juror withheld information about his criminal background on his form does not appear to be borne out by the record, and the Commonwealth has not directed us to any such record references.  That factual error appears to be the underpinning of the Commonwealth's other argument, that the juror did not seem intelligent.  These reasons are insufficient in these circumstances to overcome the other considerations in the first step of the analysis.

the exclusion of all black people from the jury, but specifically black men. "[A]rticle 12 proscribes the use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in a group delineated by race and gender." Commonwealth v. Jordan, 439 Mass. 47, 62 (2003) (no abuse of discretion or error of law where judge found prima facie evidence of pattern of discrimination in defendant's use of peremptory challenges to strike white males). Second, the mere presence on the jury of members of the group at issue is not dispositive whether there is a pattern; the totality of the circumstances must be taken into account. See Sanchez, 753 F.3d at 303 (seating of five African-Americans on jury when juror at issue was challenged did not preclude Batson-Soares challenge).

"Consideration of all relevant circumstances compels the conclusion that the defendant made the limited showing necessary to make out a prima facie showing of discrimination." Jones, 477 Mass. at 326. We conclude therefore that the judge abused his discretion in finding no pattern after the defendant's second objection to the Commonwealth's use of peremptory challenges on black men. Because such an error is structural, carrying the presumption of prejudice, we vacate the convictions and remand the case for a new trial. Id. at 325-326.

So ordered.