APPEALS COURT 
 
 COMMONWEALTH vs. ROBERTO LOPEZ-ORTIZ

 
 Docket:
 23-P-295
 
 
 Dates:
 March 28, 2024 – February 12, 2025
 
 
 Present:
 Rubin, Englander, & D'Angelo, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Constitutional Law, Jury. Jury and Jurors. Practice, Criminal, Jury and jurors, Challenge to jurors.
 
 

       Indictments found and returned in the
Superior Court Department on April 3, 2014.
      The cases were tried before Kathe M.
Tuttman, J.,  
      David J. Nathanson (Mark W. Shea also
present) for the defendant.
      Jamie Michael Charles, Assistant District
Attorney, for the Commonwealth.
      Lori J. Shyavitz, Leah R. McCoy, &
Oren Sellstrom, for Lawyers for Civil Rights & others, amici curiae,
submitted a brief.
      ENGLANDER, J.  In 2017, the defendant was convicted of
felony-murder in the second degree, with the predicate felony being unarmed
assault with intent to rob.  The murder
occurred after the defendant and several accomplices attempted to rob the
victim at the victim's apartment in Lowell. 
On appeal the defendant raises several issues, all but one of which we
dispose of this day in an unpublished memorandum and order pursuant to our Rule
23.0.
      This opinion addresses the final issue the
defendant raises, as to which the panel is not unanimous.  The defendant argues that the prosecutor
improperly utilized a peremptory challenge to strike a prospective juror
(designated juror no. 3) because of the juror's Hispanic ethnicity, and that
the judge erred in allowing that strike over the defendant's objection.  The prosecutor provided a lengthy explanation
for the strike during jury selection, and the defendant contends that the
reasons given were "not race neutral," citing in particular that the
prosecutor, in explaining the strike, referenced statements by the juror
regarding the apparent lack of Hispanic people in the jury venire.  The dissenting judge in this court also
claims that the prosecutor's reasons were not race neutral, citing the
prosecutor's references both to the jury pool comments, as well as the juror's
objection to a question on the juror questionnaire.[1]  We perceive no error in the judge's decision
to allow the peremptory strike.  As
discussed below the prosecutor's reasons were not based on race, but upon the
juror's answers and observed demeanor, which reasons the judge specifically
found were both "genuine" and "adequate."  As we discern no error, the judgment is
affirmed.
      Background.  1.  The
crime.  The evidence at trial showed that
on December 18, 2013, the defendant, Roberto Lopez-Ortiz, and three others, including
Jonathan Rivera and Donte Okowuga, decided to commit a robbery.  Okowuga had two guns, one of which he gave to
Rivera prior to the attempted robbery. 
Testimony differed on whether Rivera thereafter gave the gun to the
defendant.
      The four men drove to the victim's
building and entered it, encountering the victim in the entrance to his
apartment.  The men entered the
apartment, at which time Okowuga pointed a gun at the victim while the other
men, including the defendant, attacked him. 
The victim managed to get away and ran out of the apartment.
      Three of the men thereafter left the
building.  The victim returned to the
building, where the fourth man, who had remained just outside the apartment,
shot and killed the victim.  The
defendant testified that Okowuga was the assailant who stayed behind at the
victim's apartment, whereas Rivera and Okowuga testified that the defendant had
remained behind.[2]
      2. 
The jury selection process.  The
trial took place in February and March of 2017. 
During the second day of jury empanelment the trial judge directed questions
to the venire as a whole, including whether there was "anything about the
nature of this case as I've described it to you that would affect your ability
to be a fair and impartial juror." 
Juror no. 3 raised his hand to this question.
      The trial judge then questioned juror no.
3 individually, beginning by asking why the juror indicated that the nature of
the case might affect his ability to be fair and impartial.  Juror no. 3 replied:
"Because I
looked at the jury pool and I don't feel that [the defendant] has his peers out
there.  I don't see any Spanish people
out there or anything like that and I feel that he should be, if he's going to
be, life and death like that there should be some of his people out there."[3]
      The trial judge clarified that her
question was whether there was "anything about the nature of the case as I
described it that would affect [juror no. 3's] ability to be a fair and
impartial juror," to which juror no. 3 responded, "Oh, no, no, not at
all."
      The trial judge also inquired about juror
no. 3's answer to question 18 on the juror questionnaire, which asked, "Do
you believe that Dominicans or Puerto Ricans are more likely to [sic] than
other members of ethnic groups to commit crimes?"  Juror no. 3 had written:  "No. 
I do not approve of this question." 
Juror no. 3 replied, "I don't like those questions, I never did, I
don't think they're proper at all." 
The trial judge then explained that the purpose of the question was to
determine whether the venirepersons were biased or prejudiced and asked,
"Does that help you understand the reason for the question?"  Juror no. 3 responded, "Sure."
      The judge asked about a driving under the
influence case that the juror disclosed on his confidential juror
questionnaire, and asked when it had occurred. 
Juror no. 3 said, "I had gone to Florida, that was maybe four years
ago and one in Maine around '13." 
The judge asked him, "[H]ow were you treated by the police and the
prosecutors who were involved in handling your matters?"  The juror replied, "Down in Florida very
disgusting."  The judge then asked,
"And how about in Maine?" to which the juror responded, "Very
nice."  The judge asked, "Would
your experiences with either of those cases affect your ability to be fair to
both sides in this case?"  The juror
said, "Not at all because I'm in Massachusetts."
      The judge then allowed follow-up
questioning by the parties, and the prosecutor asked, "If you were seated
on the jury and you felt that the rest of the panel did not adequately make up
a jury of the defendant's peers; would that affect your ability to be fair and
impartial as a juror in this case?" 
The juror said, "No, not at all, I'd put that aside."  The prosecutor then asked, "So, you
would be able to put aside any beliefs that you had?"  The juror replied, "Yes, I would,
correct."
      The trial judge found juror no. 3 to stand
indifferent, but the prosecutor subsequently challenged the juror for
cause.  In doing so, the prosecutor
stated several reasons:
"The fact
that, I think he gave a number of answers that were troubling.  The fact that he had what he described as a
disgusting experience when he had an incident in Miami, as well as his initial
reaction to the make-up of the jury pool.
"While he
did answer a question saying that he could put that aside, he had to think
about it for a while.  That gives the
Commonwealth pause about whether he really can be fair and impartial to both
sides in this case given what he came in with. 
Clearly some dis[d]ain about even the question that is on the
questionnaire.  And even when you
explained to him the reason for the question, I believe it was No. 18, his
response was just, 'Sure,' it didn't seem to the Commonwealth that he was
satisfied with the reasons why that question was there."
The trial judge
declined to excuse juror no. 3 for cause, but concluded her ruling by stating,
"If you want to exercise a peremptory you may do so."
      The prosecutor then exercised a peremptory
challenge.  The defendant objected and
raised a "Soares" challenge, arguing that the peremptory was based in
part on juror no. 3's Hispanic ethnicity. 
See Commonwealth v. Soares, 377 Mass. 461, 488-489, cert. denied, 444
U.S. (1979), overruled in part by Commonwealth v. Sanchez, 485 Mass. 491
(2020).  The trial judge stated that she
did not find a pattern, and additionally stated that the reasons provided by
the Commonwealth for the for-cause challenge were an adequate and genuine
explanation for the peremptory.  Out of
"an abundance of caution," however, the trial judge asked the
prosecutor to state her reasons for the peremptory.
      The prosecutor stated:
"Your Honor,
as previously stated, the reason for the Commonwealth's objection and use of
the peremptory, is that the Commonwealth does not believe that this juror can
be fair to the Commonwealth.  It has
nothing to do with this juror's race particular to him, it is based on the
answers to the questions that he came in here and stated and indicated his
issues that he had with police previously, his beliefs that he feels that the
defendant cannot get a fair trial.
"And while
he said that he could put that aside, the Commonwealth does not believe that he
is in a position to give the Commonwealth a fair trial based on his
beliefs.  Again, going back to the
questionnaire where he was, he seemed upset or offended in some way about the
particular question, No. 18, 'Do you believe that Dominicans or Puerto Ricans
are more likely than members of other ethnic groups to commit crimes?'  And even upon your explanation, it is the
Commonwealth's opinion that he did not seem satisfied by saying very
flippantly, 'Sure.'  And that his
attitude coming into this trial, again, having nothing to do with his race,
gives the Commonwealth concern and pause and that is why the Commonwealth has
exercised a peremptory." 
The trial judge
then explicitly found that the above rationale was both "adequate"
and "genuine."
      Discussion.  On appeal, the defendant argues that the
trial judge erred in allowing the Commonwealth to strike juror no. 3.  The State and Federal Constitutions forbid a
party from exercising a peremptory challenge on the basis of a juror's
race.  See Soares, 377 Mass. at 486,
488-489.  See also Batson v. Kentucky,
476 U.S. 79, 89 (1986).  The court in
Soares held that there was "a legitimate and significant role for the
peremptory challenge," but that the use of peremptory challenges to
exclude members of discrete groups on the basis of that affiliation violated
art. 12 of the Massachusetts Declaration of Rights.  Soares, supra at 485-486, 488.
      The law of peremptory challenges has
evolved some since Soares, and can be summarized as follows.  If a peremptory challenge is objected to, the
trial judge must apply a burden-shifting analysis.  "We generally presume that peremptory challenges
are made and used properly during jury selection."  Commonwealth v. Kalila, 103 Mass. App. Ct.
582, 587 (2023), quoting Commonwealth v. Mason, 485 Mass. 520, 529 (2020).  A party who challenges a peremptory strike
must overcome the presumption of propriety by showing that "the totality
of the relevant facts gives rise to an inference of discriminatory
purpose."  Sanchez, 485 Mass. at
511, quoting Johnson v. California, 545 U.S. 162, 168 (2005).
      If the judge finds that the challenging
party has met his burden in showing an inference of discrimination, the burden
shifts to the party seeking to exercise the peremptory challenge to proffer a
"bona fide" nondiscriminatory justification for the peremptory.  Kalila, 103 Mass. App. Ct. at 587-588.  A bona fide explanation is one that is both
"genuine" and "adequate." 
Commonwealth v. Maldonado, 439 Mass. 460, 464 (2003).  The Supreme Judicial Court explained the
standard as follows:
"An
explanation is adequate if it is 'clear and reasonably specific,' 'personal to
the juror and not based on the juror's group affiliation' (in this case race),
and related to the particular case being tried. 
Challenges based on subjective data such as a juror's looks or gestures,
or a party's 'gut' feeling should rarely be accepted as adequate because such
explanations can easily be used as pretexts for discrimination.  An explanation is genuine if it is in fact
the reason for the exercise of the challenge. . . .  An explanation that is perfectly reasonable
in the abstract must be rejected if the judge does not believe that it reflects
the challenging party's actual thinking." 
(Emphasis added; citations omitted.)
Id. at 464-465.
      We review a judge's decision to allow a
peremptory challenge for abuse of discretion (or other error of law).  See Mason, 485 Mass. at 530.  An abuse of discretion occurs when the trial
judge made "a clear error of judgment in weighing the factors relevant to
the decision, such that the decision falls outside the range of reasonable
alternatives" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27
(2014).  In doing so we give great
deference to the findings of the trial judge, who saw, heard, and participated
in the exchange with the prospective juror. 
See Kalila, 103 Mass. App. Ct. at 590, and cases cited ("We of
course give deference to the fact finding of trial judges, who see and hear the
witnesses and the counsel in real time in the court room").
      In this case, the trial judge found that
the justification provided by the Commonwealth for its peremptory challenge was
both adequate and genuine.[4]  As noted,
the prosecutor began her explanation by stating that "the Commonwealth
does not believe that this juror can be fair to the Commonwealth."  It bears emphasis that in response to the
judge's question to the venire, "[i]s there anything about the nature of
this case as I've described it to you that would affect your ability to be a
fair and impartial juror?" the juror himself raised his hand.  When asked why, the juror stated:
"Because I
looked at the jury pool and I don't feel that [the defendant] has his peers out
there.  I don't see any Spanish people
out there . . . and I feel that he should be, if he's going to be,
life and death like that there should be some of his people out there."
      The prosecutor cited this answer both
times that she provided an explanation for her concerns about the prospective
juror, and she cited other answers the juror gave as well.  As set forth above, the prosecutor also cited
an experience the juror had with police in Florida that the juror described as
"disgusting."  And, the
prosecutor cited concerns about the manner in which the juror answered
questions, which would not be apparent from the cold transcript that we review
on appeal.  The prosecutor noted that
while the juror subsequently stated that he could put aside his concerns about
the make-up of the jury pool, the juror "had to think about it for a
while."  The prosecutor also cited
the way the juror responded to questions and statements from the judge, which
the prosecutor described as "flippant[]."
      It was not an abuse of discretion for the
judge to find that the above reasons were "adequate" -- that is,
"clear and reasonably specific, personal to the juror and not based on the
juror's group affiliation, . . . and related to the particular case
being tried" (quotation omitted). 
Maldonado, 439 Mass. at 464-465. 
Indeed, a fact-based concern that a juror cannot be fair and impartial
is the sine qua non of the pretrial juror evaluation process.  Many years ago in Soares, the Supreme
Judicial Court reaffirmed the legitimacy of peremptory challenges as a means of
"assuring the parties 'that the jurors before whom they try the case will
decide on the basis of the evidence placed before them, and not
otherwise.'"  Soares, 377 Mass. at
485, quoting Swain v. Alabama, 380 U.S. 202, 219 (1965).  In light of the above answers, the prosecutor
may well have been concerned that juror no. 3 would view the case, not through
the lens of the facts presented and the law provided, but through the lens of
the race of the defendant and perceived unfairness of the system.  The judge could certainly find that such
concerns about the impartiality of a prospective juror were not based on race,
and are an adequate basis for exercising a peremptory challenge.
      The Supreme Judicial Court's opinion in
Commonwealth v. Williams, 481 Mass. 443 (2019), supports this conclusion.  In Williams, a prospective juror was excused
for cause after saying that she believed "the system is rigged against
young African American males."  Id.
at 444.  The court held that the judge's
assessment of the juror's impartiality was "incomplete," because the
judge's questioning had failed to recognize that the juror's general belief about
the system would not necessarily render her incapable of being impartial in the
case at bar -- more questioning was required. 
Id. at 446-447.  However -- and
importantly for this case -- the court held that the defendant was not
prejudiced by the exclusion of the juror for cause, because the Commonwealth
had a peremptory challenge available for use at the end of jury selection,
which challenge could have been used for the prospective juror.  Id. at 453-454.  In so holding, the court implicitly recognized
that although the juror's expressed belief that the criminal justice system is
rigged against a racial group was insufficient to excuse a juror for cause,
such an expressed belief would be an adequate basis to exercise a peremptory
challenge.  See id.[5]
      In short, the trial judge did not abuse
her discretion, or commit an error of law, in finding and ruling that the
prosecutor's reasons were adequate.[6]
      The defendant argues that the prosecutor's
concern as to juror no. 3's impartiality derived from the fact that juror no. 3
and the defendant were both Hispanic, and thus that the prosecutor's concern
was "not race neutral," because "the prosecutor's argument
assumed that the juror's shared race would cause him to be biased."  The defendant's argument, however, misstates
what the prosecutor said and what the judge found.  The prosecutor stated that her concerns arose
from juror no. 3's statements regarding the makeup of the venire and thus the
possible unfairness of the trial, the juror's prior experiences with the
police, and also the manner in which the juror answered questions.  These concerns arose out of facts personal to
the juror, and the judge found them adequate and genuine.  See Maldonado, 439 Mass. at 464. The record
does not show that the prosecutor's concern as to impartiality was based upon
juror no. 3's race.[7]
      The dissent goes all out in criticizing
the result we reach, but the dissent suffers from several basic flaws.  Most importantly, the dissent ignores the
findings of the trial judge, treating them as irrelevant.  But we are not engaged in de novo
review.  The question of counsel's
"genuineness" is a question of fact. 
See Maldonado, 439 Mass. at 465 ("An explanation is genuine if it
is in fact the reason for the exercise of the challenge").  The question of "adequacy" is more
of a mixed question of law and fact, but there can be no denying that the
adequacy determination has a significant factual component; in making an
adequacy determination a trial judge must determine and evaluate what reasons
are actually being advanced, based on a colloquy with counsel (and often, the
juror) that is unstructured and often shifting. 
Most important, the ultimate question for the judge is whether the
party's strike was "motivated . . . by," or "based on"
the prospective juror's race (here, ethnicity). 
See Flowers v. Mississippi, 588 U.S. 284, 303 (2019), quoting Foster v.
Chatman, 578 U.S. 488, 513 (2016) ("The ultimate inquiry is whether the
State was 'motivated in substantial part by discriminatory intent'");
Commonwealth v. Burnett, 418 Mass. 769, 771 (1994).  The question of motivation is fundamentally a
question of fact, and the trial judge is far better positioned to make that
determination than we are on appellate review.[8]  See Burnett, supra ("the judge must
. . . decide whether the challenges were exercised improperly because
they were based on the juror's membership in a discrete group.  Once the judge decides that an adequate
reason exists for exercising the challenge, an appellate court will accord
substantial deference to the decision if it is supported by the record").[9]
      Unconstrained by the judge's findings, the
dissent conducts its own de novo review of what the prosecutor said.  For example, the dissent states that "in
this Commonwealth where a Latino man is struck for expressing concern about an
all-white[10] jury hearing a Latino's murder trial, that strike is 'based on
race.'"  Post at
       (Rubin, J., dissenting).  But this statement is erroneous on two
fronts.  First, the dissent's
characterization is not a fair summary of what the prosecutor actually
said.  As discussed above, the prosecutor
was concerned about the substance and manner of the juror's answers to several
questions, writ large. The prosecutor specifically cited, for example, the
juror's demeanor when he was asked if he could "put . . .
aside" the make-up of the jury pool. 
Picking through paragraphs of reasons to isolate two of the prosecutor's
statements takes them out of their larger context and recasts the thrust of the
prosecutor's expressed concerns.  And
second, the dissent is wrong when it suggests that its proposition must be
accepted as a matter of law.  Rather,
under our cases the prosecutor's statements must be evaluated for whether the
strike is motivated by race, and we as an appellate court do not do our own
fact finding.  The trial judge found that
the reasons given were genuine and adequate, and on this record that was
neither an abuse of discretion nor an error of law.[11]
      In sum, the trial judge did not err in
allowing the Commonwealth's peremptory challenge of juror no. 3.  The judgment and the order denying the
renewed motion for a new trial are affirmed.
So ordered. 

      D'ANGELO, J. (concurring).  Because we grant great deference to the trial
judge's findings on whether a permissible ground for a peremptory challenge has
been shown, I feel constrained to concur in the majority's decision.  See Commonwealth v. Kalila, 103 Mass. App.
Ct. 582, 590 (2023) ("We of course give deference to the fact finding of
trial judges, who see and hear the witnesses and the counsel in real time in
the court room").  I, like Justice
Lowy in his concurring opinion in Commonwealth v. Sanchez, write separately to
urge the Supreme Judicial Court to reevaluate the three-step analysis
established in Commonwealth v. Soares, 377 Mass. 461, 492,  cert. denied, 444 U.S. 881 (1979), overruled
in part by Sanchez, 485 Mass. 491 (2020), and eliminate the first step
requiring a prima facie showing that a challenge is based on race or other
protected status.  See Sanchez, supra at
517 (Lowy, J. concurring).  Additionally,
I wish to emphasize the need for clear and concise findings in matters related
to alleged race-based challenges during jury selection.
      Discussion.  1. 
Batson-Soares challenges.  Article
12 of the Massachusetts Declaration of Rights, and the Sixth and Fourteenth
Amendments to the United States Constitution, guarantee a criminal defendant
"the right to a trial by an impartial jury."  Commonwealth v. Susi, 394 Mass. 784, 786
(1985).  See Soares, 377 Mass. at
492.  Pursuant to these same protections,
the Commonwealth may not exercise a peremptory challenge on the basis of race
or other protected classes.  See Sanchez,
485 Mass. at 493.[1]
      "A challenge to a peremptory strike,
whether framed under State or Federal law, is evaluated using a [three-step]
burden-shifting analysis" (quotation and citation omitted).  Commonwealth v. Ortega, 480 Mass. 603, 606
(2018).  "First, the burden is on
the objecting party to establish a 'prima facie showing of impropriety'
sufficient to 'overcome[] the presumption of regularity afforded to peremptory
challenges.'"  Commonwealth v.
Henderson, 486 Mass. 296, 311 (2020), quoting Commonwealth v. Robertson, 480
Mass. 383, 390-391 (2018).  If the judge
finds that a prima facie case has been established, "the burden shifts to
the party attempting to strike the prospective juror to provide a group-neutral
reason for doing so."  Commonwealth
v. Jones, 477 Mass. 307, 319 (2017). 
Finally, the judge must "evaluate[] whether the proffered reason is
adequate and genuine" (quotation and citation omitted).  Robertson, supra at 391.
      Trial judges have extraordinary tasks
during jury trials.  Selecting a jury can
be time consuming and arduous depending on the circumstances.  Currently, in determining whether a prima
facie case of discriminatory impropriety has been established, a judge must
consider all relevant circumstances, including all of the excluded jurors and
the similarities in their race, differences compared to the challenged juror,
and the composition of the jurors already seated.  See Batson v. Kentucky, 476 U.S. 79, 96-97
(1986).  This can prove a herculean task
-- especially if jury selection spans numerous days.  Much of our appellate analysis over the years
has been spent deciding whether a judge abused their discretion in finding that
a prima facie showing has been made.[2]
      Additionally, the first step in the
analysis forces judges to find "that the challenging attorney may have
engaged in discriminatory conduct." 
Sanchez, 485 Mass. at 517 (Lowy, J., concurring).  Such a task "often requires the judge to
make a finding of discriminatory intent concerning an attorney whose ability
and integrity the judge respects based on years of the judge's
experience."  Id.  "One can understand a judge's reticence
to do so, and perhaps even a fellow attorney's as well, in the face of what
appears to be minimal evidence of discriminatory purpose."  Id.
      Recently, the Supreme Judicial Court
described the first step of the analysis in greater detail:
"As to the
first step of the Batson-Soares inquiry, the presumption of propriety is
rebutted when the totality of the relevant facts gives rise to an inference of
discriminatory purpose.  Specifically,
the inquiry is merely a burden of production, not persuasion.  Because establishing a prima facie case of
impropriety is not an onerous task, we have long cautioned that judges should
think long and hard before they decide to require no explanation from the
prosecutor for the challenge and make no findings of fact."  (Quotations and citations omitted.)  
Commonwealth v.
Carter, 488 Mass. 191, 196 (2021).
      Notably, however, the court has
"persistently urged, if not beseeched" judges to elicit group-neutral
explanations regardless of whether the first prong of the inquiry has been
satisfied.  Sanchez, 485 Mass. at 515
(Lowy, J., concurring).  
      Judges, like the one in this case, should
not spend time determining whether the burden of persuasion of step one has been
met.  It is often a time consuming,
clumsy, and difficult endeavor. 
Therefore, it is time for the first step of this analysis to be
eliminated.[3]  Once an attorney objects
to a peremptory challenge arguing that it is race based, the burden should
immediately shift to the challenging party. 
If the challenge is not race based, the attorney who seeks to have the
juror excluded should immediately provide the reason.  This should not be difficult because there
should not be any discriminatory intent involved.  The judge should carefully observe what
happens next, because
"[t]he
[attorney's] own demeanor -- the furtiveness of a glance, the hesitation in
giving a response, or the frantic reading of the juror questionnaire before
proffering an explanation may provide valuable clues as to whether even a sound
reason for the challenge is genuine or merely a post hoc justification for an
impermissibly motivated challenge."
Commonwealth v.
Maldonado, 439 Mass. 460, 466 (2003).
      In this case, the trial judge went to
great lengths to decide whether a prima facie showing was made and reiterated
this fact repeatedly.  The judge
emphasized that she did not find a pattern in the challenges.  Under this suggested approach to eliminate
the first inquiry following the invocation of a peremptory challenge, the judge
would turn to the challenging party to provide the reason(s) for the challenge
immediately.  Such an approach would
spare the judge from the complicated and difficult inquiry into the objecting
party's prima facie showing.  Instead, it
would place the burden on the challenging party to immediately give an answer
as to why they challenged the juror.
      2. 
Findings.  Ultimately, the trial
judge has the difficult task of making factual and credibility determinations
of an attorney's explanation for a peremptory challenge.  See Commonwealth v. Prunty, 462 Mass. 295,
313 (2012) (judge's decision on ultimate question of discriminatory intent
represents finding of fact).  The Supreme
Judicial Court has explained that
"[t]he
determination whether an explanation is bona fide entails a critical evaluation
of both the soundness of the proffered explanation and whether the explanation
(no matter how sound it might appear) is the actual motivating force behind the
challenging party's decision.  In other
words, the judge must decide whether the explanation is both adequate and
genuine.
"An
explanation is adequate if it is clear and reasonably specific, personal to the
juror and not based on the juror's ground affiliation . . . and
related to the particular case being tried. 
Challenges based on subjective data such as a juror's looks or gestures,
or a party's gut feeling should rarely be accepted as adequate because such
explanations can easily be used as pretexts for discrimination.  An explanation is genuine if it is in fact
the reason for the exercise of the challenge. 
The mere denial of an improper motive is inadequate to establish the
genuineness of the explanation.  An
explanation that is perfectly reasonable in the abstract must be rejected if
the judge does not believe that it reflects the challenging party's actual
thinking."  (Quotations and
citations omitted.)
Maldonado, 439
Mass. at 464-465.
      Therefore, a judge is "obligated to
make a specific determination or specific findings, in some form"
regarding the adequacy and genuineness of an attorney's proffered reasons for a
peremptory challenge.  Commonwealth v.
Benoit, 452 Mass. 212, 221 (2008).
      In this case, the trial judge requested
that the prosecutor provide a race-neutral reason for exercising a peremptory
challenge as to juror no. 3.  The
Commonwealth responded:
"Your Honor,
as previously stated, the reason for the Commonwealth's objection and use of
the peremptory, is that the Commonwealth does not believe that this juror can
be fair to the Commonwealth.  It has
nothing to do with this juror's race particular to him, it is based on the
answers to the questions that he came in here and stated and indicated his
issues that he had with police previously, his beliefs that he feels that the
defendant cannot get a fair trial.
"And while
he said that he could put that aside, the Commonwealth does not believe that he
is in a position to give the Commonwealth a fair trial based on his
beliefs.  Again, going back to the
questionnaire where he was, he seemed upset or offended in some way about the
particular question, No. 18, 'Do you believe that Dominicans or Puerto Ricans
are more likely than members of other ethnic groups to commit crimes?'  And even upon your explanation, it is the
Commonwealth's opinion that he did not seem satisfied by saying very
flippantly, 'Sure.'  And that his
attitude coming into this trial, again, having nothing to do with his race,
gives the Commonwealth concern and pause and that is why the Commonwealth has
exercised a peremptory."
      The majority writes that, "[i]n this
case, the trial judge found that the justification provided by the Commonwealth
for its peremptory challenge was both adequate and genuine."  Ante at        .  Although the judge did use that phraseology,
it was primarily in conjunction with the judge's initial finding that there had
not been a showing of prima facie pattern. 
Specifically, the judge stated:
"That said,
I will state that in the Court's view based on what [the prosecutor] already
said about her reasons for requesting an excuse for cause of this juror,
although I didn't find it sufficient for a basis for cause I do find it
sufficient if I were to find a pattern I would find there was an adequate and
genuine rationale that has nothing to do with the ethnicity of this juror
because of the reasons [the prosecutor] put on the record previously.  So, that is my ruling, I am not finding a
pattern.
      ". . .
"Okay, but,
[defense counsel], remember I have not asked the Commonwealth to justify their
exercise of a peremptory because I have not found that a pattern has been
established, so that's where we are in terms of this exercise.  What I did state was, if we got to that point
I was persuaded that there was an adequate and genuine reason.  We haven't even gotten to that point because
on the record that is before me based on my observations of this juror and the
entire course of this empanelment, I am not persuaded that there is a
pattern."
      I agree that it was not an abuse of
discretion for the judge to find that the above reasons were
"adequate."  However, the judge
should have made more clear and concise findings regarding the prosecutor's
reasoning regarding the challenge.  The
judge simply concluded that "the Commonwealth [was] entitled to make a
decision on the basis of body language and other observable characteristics of
a potential juror."  The judge went
on, "[T]he Commonwealth . . . may exercise a
peremptory on the basis of information that they legitimately believe would
make that person a juror who could not be fair to both sides." 
      When an attorney challenges a juror --
even partially -- based on their answers being "flippant[]" or on
their attitude, the judge should make specific and clear findings.  Demeanor-based reasons "should rarely be
accepted as adequate because such explanations can easily be used as pretexts
for discrimination."  Maldonado, 439
Mass. at 465-466.  Based on a transcript
alone, an appellate court cannot ascertain the veracity of the attorney's
perceptions.  Thus, we need the benefit
of substantial judicial findings regarding observations made of the jurors and
attorney alike.

      RUBIN, J. (dissenting).  As the court majority correctly indicates, a
peremptory challenge based even in part on race or ethnicity violates the State
and Federal constitutional rights of the defendant.[1]  Race- or ethnicity-based challenges (what
courts refer to collectively as race-based challenges) are so serious a matter,
that "a Batson-Soares error constitutes structural error" requiring
in every case vacatur of the conviction and a new trial.  Commonwealth v. Jones, 477 Mass. 307, 325-326
(2017).[2]
      In this case, at least some of the
prosecutor's given reasons for her peremptory challenge were race based, not
race neutral.  That should be the end of
the inquiry.  Other arguably race-neutral
reasons, whether legitimate or not, put forward by the prosecutor do not
protect the peremptory strike from invalidation, or disentitle the defendant to
a new trial with a jury selection process not tainted by a peremptory challenge
in part motivated by race.
      To reach the contrary result, the court
majority abdicates our well-settled responsibility to determine which proffered
reasons are race- or other protected group-based.  Contrary to the teaching of the Supreme
Judicial Court, the majority explicitly renders the protection in this
Commonwealth against racial discrimination in jury selection weaker,
eliminating decades of antidiscrimination law by freeing a party from the need
to articulate a race- or other group-neutral explanation for its peremptory
strike after a judge has found a prima facie case of discrimination.  See ante at n.6.  It thus critically weakens the protections
against discrimination set out by the Supreme Judicial Court in Commonwealth v.
Soares, as broadened in Commonwealth v. Sanchez, and these cases' progeny.  See Commonwealth v. Soares, 377 Mass. 461,
cert. denied, 444 U.S. 881 (1979), overruled in part by Commonwealth v.
Sanchez, 485 Mass. 491, 511 (2020). 
Given this court's unfortunate and unwarranted action, it will be up to
the Supreme Judicial Court to restore Massachusetts antidiscrimination law to
what it was before today's decision.
      Background.  To begin with, the facts of the crime of
which the defendant was convicted are described in part in the body of the
majority opinion in a way that may cast him in a false light.  To the extent that any the facts are
relevant, the jury in this case concluded that the defendant was not armed and
was not the shooter.  He was acquitted of
murder in the first degree, armed home invasion, and armed assault with intent
to rob.  He was convicted, rather, of
unarmed assault with intent to rob, and, with that as the predicate crime,
felony-murder in the second degree, a judge-made crime "of questionable
origin," that "eroded the relation between criminal liability and
moral culpability," and that ceased to exist in this Commonwealth 187 days
after the defendant's conviction, but for which he was sentenced to, and is now
serving a sentence of, life imprisonment (quotations and citations
omitted).  Commonwealth v. Brown, 477
Mass. 805, 825, 826, 832 (2017).
      1. 
Facts about jury selection. 
During the general voir dire portion of jury empanelment, juror no. 3
raised his hand in response to a question about whether anything about the
nature of the case would affect his ability to be fair and impartial.  When asked by the judge at individual voir
dire why he raised his hand, the juror said,
"Because I
looked at the jury pool and I don't feel that [the defendant] has his peers out
there.  I don't see any Spanish people
out there or anything like that and I feel that he should be, if he's going to
be, life and death like that there should be some of his people out
there." 
When the judge
pointed out, "The question though was there anything about the nature of
the case as I described it that would affect your ability to be a fair and
impartial juror," the juror said, "Oh, no, no, not at all."
      The judge asked the juror to explain the
extent of his contact with persons of Hispanic descent.  The juror said,
"Well, I'm
100 percent Puerto Rican and I try, you know, it's, I grew up here as a young
kid so I'm kind of, how would you say, not pro this or pro that because now I
don't appear to be Hispanic, but I've gone through my life having to deal with
something like that so."
The judge
clarified that the question was what sources of contact the juror had had with
persons of Hispanic descent, and he said, "Oh, family, friends, music,
everything, I try to stay into the community still."
      The judge said, "Question 18 asks,
'Do you believe that Dominicans or Puerto Ricans are more likely
. . . than other members of ethnic groups to commit crimes?'  You checked, 'No.  I do not approve of this
question.'"  The juror replied,
"Yeah, I don't like those questions, I never did, I don't think they're
proper at all."  The judge explained
the need for the question was to ensure that no one had a personal bias or
prejudice that might make them unqualified to serve.  She then asked, "Does that help you
understand the reason for the question?" 
The juror responded, "Sure."
      The judge asked the juror about a driving
under the influence case that was mentioned on the confidential juror
questionnaire, and asked when it occurred. 
The juror said, "I had gone to Florida, that was maybe four years
ago and one in Maine around '13." 
The judge asked him, "[H]ow were you treated by the police and the
prosecutors who were involved in handling your matters?"  The juror replied, "Down in Florida very
disgusting."  The judge then asked,
"And how about in Maine?" to which the juror responded, "Very
nice."  The judge asked, "Would
your experiences with either of those cases affect your ability to be fair to
both sides in this case?"  And the
juror said, "Not at all because I'm in Massachusetts."
      The judge then allowed follow-up
questioning by the parties, and the prosecutor asked, "If you were seated
on the jury and you felt that the rest of the panel did not adequately make up
a jury of the defendant's peers; would that affect your ability to be fair and
impartial as a juror in this case?" 
The juror said, "No, not at all, I'd put that aside."  The Commonwealth then asked, "So, you
would be able to put aside any beliefs that you had?"  The juror replied, "Yes, I would,
correct."  The judge found that the
juror could be fair and impartial and that he stood indifferent.
      The Commonwealth moved to strike the juror
for cause on the ground "that he had what he described as a disgusting
experience when he had an incident in Miami, as well as his initial reaction to
the make-up of the jury pool."  The
judge found the juror fair and impartial and that he stood indifferent, and she
denied the motion.  The prosecutor then
exercised a peremptory challenge.
      The defendant objected on Batson-Soares
grounds.  See Batson v. Kentucky, 476
U.S. 79 (1986); Soares, 377 Mass. at 486. 
The judge said she found no "pattern" of discrimination, also
stating, "I do recognize a pattern can be demonstrated with a single
challenge."  The defendant requested
that the judge ask the Commonwealth its race-neutral reason for the
challenge.  The judge said, "I'm not
persuaded there is a pattern but in abundance of caution I will ask the
Commonwealth to state its reasons for the record."  The prosecutor then responded:
"Your Honor,
as previously stated, the reason for the Commonwealth's objection and use of
the peremptory, is that the Commonwealth does not believe that this juror can
be fair to the Commonwealth.  It has
nothing to do with this juror's race particular to him, it is based on the
answers to the questions that he came in here and stated and indicated his
issues that he had with police previously, his beliefs that he feels that the
defendant cannot get a fair trial.
"And while
he said that he could put that aside, the Commonwealth does not believe that he
is in a position to give the Commonwealth a fair trial based on his
beliefs.  Again, going back to the questionnaire
where he was, he seemed upset or offended in some way about the particular
question, No. 18, 'Do you believe that Dominicans or Puerto Ricans are more
likely than members of other ethnic groups to commit crimes?'  And even upon your explanation, it is the
Commonwealth's opinion that he did not seem satisfied by saying very
flippantly, 'Sure.'  And that his
attitude coming into this trial, again, having nothing to do with his race,
gives the Commonwealth concern and pause and that is why the Commonwealth has
exercised a peremptory."  (Emphases
added.)
Without any
further questioning and without any specific factual findings, the judge said,
"I find that the Commonwealth has identified, for the same reasons they
previously identified, a rationale for the exercise of this peremptory that is
both adequate and genuine."
      Discussion.  The procedure for addressing a Batson-Soares
challenge to a peremptory strike is well known. 
"A challenge to the peremptory strike of a potential juror is subject
to a three-step burden-shifting analysis. 
See Batson, 476 U.S. at 94-95; Soares, 377 Mass. at 489-491."  Commonwealth v. Jackson, 486 Mass. 763, 768
(2021).  In the usual case,
"[f]irst, to rebut the presumption that the strike was proper, the
challenger must make out a prima facie case that it was impermissibly based on
race or other protected status by showing that the totality of the relevant
facts gives rise to an inference of discriminatory purpose" (quotation and
citations omitted).  Id.  Second, if the challenger makes that showing,
the burden shifts to the party exercising the challenge to provide a
"race-neutral" (or other-protected "group-neutral")
explanation for it.  Id.  See Commonwealth v. Carter, 488 Mass. 191,
192 (2021).  "Third and finally, the
judge must then determine whether the explanation is both 'adequate' and
'genuine'" (quotation and citation omitted).  Jackson, supra at 768.
      Trial judges are "strongly encouraged
to ask for an explanation as questions are raised regarding the appropriateness
of the challenges.  A judge has the broad
discretion to do so without having to make the determination that a pattern of
improper exclusion exists" (quotation and citations omitted).  Commonwealth v. Lopes, 478 Mass. 593, 598
(2018).  Where, as in this case, the
Commonwealth has given a purportedly race-neutral explanation for a challenged
peremptory strike, and the trial judge has ruled on whether the strike was
motivated by race, "the preliminary issue of whether the defendant had
made a prima facie showing" –- on appeal what is ordinarily required at
the first step of the analysis –- "becomes moot."  Commonwealth v. Carleton, 36 Mass. App. Ct.
137, 141-142, S.C., 418 Mass. 773 (1994), quoting Hernandez v. New York, 500
U.S. 352, 359 (1991) (plurality opinion of Kennedy, J., in which Rehnquist,
C.J., and White and Souter, JJ., joined).
      The initial question we face therefore is
the second-step one, whether the reasons put forward by the Commonwealth for
the strike are race neutral.  As
described above, see supra at         &
n.1, a strike motivated even in part by race is impermissible.  We "make our own [de novo] determination
whether the Commonwealth's reasons for the challenge were race-neutral"
(citation omitted).  Commonwealth v.
Rodriguez, 457 Mass. 461, 473 (2010). 
See Paulino v. Harrison, 542 F.3d 692, 699 (9th Cir. 2008) ("At
Batson's second step, the question of whether the state has offered a
'race-neutral' reason is a question of law that we review de novo");
United States v. Mulero-Algarin, 535 F.3d 34, 39 (1st Cir. 2008) ("A
district court's determination of the facial adequacy of the government's
proffered explanation for withholding a substantial assistance motion presents
a question of law that, logically, engenders de novo review"); United
States v. Smith, 534 F.3d 1211, 1226 (10th Cir.), cert. denied, 555 U.S. 1058
(2008) ("When considering a Batson claim, we review de novo whether the
proffered explanations were race-neutral").
      The majority's first error, and one that
substantially weakens the protection of defendants and jurors against
race-based peremptory strikes, is its rewriting of the law articulated in
innumerable cases over several decades to eliminate the requirement that in the
face of a prima facie case of discrimination, or on request of the judge, the
party seeking to strike the juror state a race-or other group-neutral
explanation for the strike.  See
Commonwealth v. Grier, 490 Mass. 455, 458 (2022) (party defending challenge must
provide "group-neutral explanation"); Commonwealth v. Kozubal, 488
Mass. 575, 581 (2021), cert. denied, 142 S. Ct. 2723 (2022) (same);
Commonwealth v. Carter, 488 Mass. 191, 196 (2021) (same); Commonwealth v.
Sanchez, 485 Mass. 491, 493 (2020) (same); Commonwealth v. Long, 419 Mass. 798,
807 (1995) ("group-neutral reason"). 
This requirement has been part of antidiscrimination law for
decades.  See, e.g., Trevino v. Texas,
503 U.S. 562, 565 (1992) (Batson "announced the now familiar rule that
when a defendant makes a prima facie showing that the State has exercised its
peremptory challenges to exclude members of the defendant's racial group, the
State bears the burden of coming forward with a race neutral
justification").  Yet the court
eliminates the requirement that at the second step of analysis the party
defending the strike articulate a race- or group-neutral justification for
it.  See ante at
       . 
The court majority writes instead that "[i]f the judge finds that
the challenging party has met his burden in showing an inference of discrimination,
the burden shifts to the party seeking to exercise the peremptory challenge to
proffer a 'bona fide' nondiscriminatory justification for the peremptory
challenge.  Kalila, 103 Mass. App. Ct. at
587-588.  A bona fide explanation is one
that is both 'genuine' and 'adequate.' 
Commonwealth v. Maldonado, 439 Mass. 460, 464 (2003)."  Ante at
       . 
The court's entire analysis then purports to relate only to genuineness
and adequacy.
      As myriad cases, including those quoted
above, hold, in order for the party defending the strike to meet its step-two
burden under Soares, and for there even to be a need to proceed to step three
of the analysis, its articulated justification must be race or other group
neutral.  See Sanchez, 485 Mass. at 493
(under both State and Federal law, proffered reason must be "group
neutral" -– if it is, judge must determine whether it is adequate and
genuine).  The majority never considers
whether the proffered reasons given by the prosecutor were "race
neutral" or "group neutral," in its entire analysis.  In a final footnote the majority states,
again contrary to law, that the phrase "race neutral" refers not to
the proffered justification, but to the judge's ultimate conclusion about
whether there was discriminatory intent. 
Indeed, the majority suggests that applying step two of the
Batson-Soares analysis as it has been articulated for decades to require a
race-neutral justification for the peremptory strike before proceeding to the
questions of genuineness and adequacy, would be to implement "a new and
different standard."  Ante at
n.11.  The majority's suggestion of
unfamiliarity with step two of the Batson-Soares analysis is, to say the least,
difficult to understand.
      In response to this dissent, the majority
does drop a footnote where it states that "an appellate court reviews
counsel's stated reasons only for whether those reasons are racially
discriminatory (that is, not 'race neutral') on their face.  But that review is quite limited."  Ante at n.8. 
This incorrect assertion, however, that at the second step we look at
the proffered reasons only "on their face" is just another elliptical
way of eliminating the careful, de novo review of those reasons at the second
step required under the law of this Commonwealth to prevent racial
discrimination in jury selection.  See,
e.g., Commonwealth v. Prunty, 462 Mass. 295, 313 (2012) ("An explanation
that is 'race neutral' on its face is nonetheless unacceptable if it is merely
a proxy for a discriminatory practice" [citation omitted]).  Indeed, even the Supreme Court plurality that
the majority cites for its supposed statement of law recognized that some
facially race-neutral proffered justifications will not meet the requirement of
step two because they must "be treated as a surrogate for race."  Hernandez, 500 U.S. at 371 (plurality
opinion).
      The court further insists that we are not
engaged in de novo review because the race neutrality of a given proffered
reason is not a question of law to be reviewed de novo, but one of fact,
requiring deference to the trial judge's conclusion.  See ante at n.8.  This is a serious error.  It amounts to an abdication of our long-settled
role in protecting against discrimination by engaging in de novo appellate
review of the race-neutrality of proffered justifications for a peremptory
challenge when a prima facie case has been made out that it is racially
discriminatory.
      This is, indeed, a particularly inapt case
in which to announce incorrectly that we must defer to the trial judge's
finding of race neutrality because it is a question of fact, since the judge
here did not, in fact, find each of the Commonwealth's reasons race
neutral.  The entire finding of the trial
judge given after the Commonwealth proffered its justifications for the strike
is quoted above:  "I find that the
Commonwealth has identified, for the same reasons they previously identified, a
rationale for the exercise of this peremptory that is both adequate and
genuine."  A close reading of the
majority opinion reveals that it is these findings of adequacy and genuineness
to which the court defers –- not a finding, that it ultimately does not claim
was made, that each reason was race neutral.
      Having skipped the critical question of
reviewing whether the reasons given were as a matter of law race-neutral –-
indeed having stripped the question from the legal analysis –- the court
majority focuses as described only on what it calls the "factual
findings" of the trial judge with respect to the genuineness and adequacy
of the prosecutor's proffered reasons for the strike.  Ante at
       .
      But these are questions that may not
properly be reached if the party exercising the strike has not, at the previous
step of analysis, met its burden by proffering race-neutral reasons for the strike.  See supra at
        (quoting description of proper
procedure in Jackson, 486 Mass. at 768). 
Of course this makes sense.  If a
race-based (rather than race-neutral) reason is "genuine," which is
indeed a question of fact, it is not a permissible basis for a peremptory
strike.  As for adequacy, the court
majority concedes that it contains subsidiary questions of law.  But one of them, in fact, is whether the
proffered reason is race neutral. 
Maldonado, 439 Mass. at 464-465 ("An explanation is adequate if it
is 'clear and reasonably specific, 'personal to the juror and not based on the
juror's group affiliation' [in this case race] . . . and related to
the particular case being tried").
      I turn therefore to the proper initial
step-two question whether, as a matter of law, any of the reasons put forward
by the Commonwealth were based on race. 
And of course, contrary to the assertion of the court majority, I engage
in no fact finding.  Ante at
       .
      Before us, the Commonwealth defends only
one of the reasons given by the prosecutor at trial, the prosecutor's asserted
concern about the juror's interactions with police, particularly the one in
Florida he described as "disgusting."[3]  But accepting that reason as race neutral
does not resolve the case, because even if the challenge was motivated only in
part by race, it would be impermissible. 
The Commonwealth does not mention the alleged "demeanor" or
"flippancy" of the juror –- reasons that "should rarely be
accepted as adequate because such explanations can easily be used as pretexts
for discrimination," Maldonado, 439 Mass. at 465-466 –- although the court
majority does.  Nonetheless, even if
these reasons were before us and adequate to support a peremptory strike,
because the strike was at least in part motivated by race, the analysis would
be the same.
      The Commonwealth does not attempt to
defend as race neutral the prosecutor's assertion that the juror could not be
"fair" to the Commonwealth because of his "beliefs that he feels
that the defendant cannot get a fair trial."  Although that argument is thus waived,
because the court majority upholds the strike, I must address it.
      First, juror no. 3 did not even say what
the prosecutor said he did.  He said that
if a Latino person was going to be tried for murder, his jury should include
some Latino people, and indeed the reason the prosecutor gave explicitly for
her for-cause challenge was precisely the juror's reaction to the all-white
jury venire present that day.[4]  The
prosecutor also said that she was striking the juror because he "seemed
upset or offended in some way" that jurors in this criminal case were
being asked if members of the juror's specific ethnicity –- not merely Latino,
but Puerto Rican –- are, as a well-known racist stereotype asserts, prone to
criminality.
      Neither of these reasons is race
neutral.  A person of Puerto Rican or
Dominican descent is the person most likely to be upset about seeing what
appears to be an all-white jury about to try a Puerto Rican or Dominican
American defendant for murder.  And a
person of Puerto Rican or Dominican descent is likely to be the most offended
by a question in a government court room asking, "Do you believe that
Dominicans or Puerto Ricans are more likely than members of other ethnic groups
to commit crimes."  Indeed, if you
asked all people of Puerto Rican descent whether they shared the juror's
offense at the stereotype, you would likely find overwhelming, maybe unanimous,
agreement with it.
      Under art. 12 of the Declaration of Rights
as construed in Soares and its progeny, in this Commonwealth where a Latino man
is struck for expressing concern about an all-white jury hearing a Latino's
murder trial, that strike is "based on race."  See, e.g., Prunty, 462 Mass. at 313.  In Prunty the Supreme Judicial Court stated:
"In this
case, defense counsel based his challenge on an assumption that an individual
who had suffered racism would feel subtle biases against an alleged
racist.  This assumption, however, is
undoubtedly 'based' on race, and therefore provides an illegitimate basis for a
peremptory challenge.  See Georgia v.
McCollum, [505 U.S. 42,] 59 [1992].  It
would require a measure of 'willful intellectual blindness,' Love v. Yates, 586
F. Supp. 2d 1155, 1180 (N.D. Cal. 2008), for us to conclude that Juror 16's
experience of racism (particularly the race-specific examples described by the
judge in his questioning) does not correlate almost perfectly with his race and
therefore serve as a 'surrogate for race.' 
Hernandez v. New York, [500 U.S. 352,] 371 [1991]."
Prunty,
supra.  The same is true where a Puerto
Rican man is offended by a question asking jurors if they agree that Puerto
Ricans are prone to criminality, or expresses concern about an all-white jury
venire in a trial of a Latino defendant.
      That some white people may share these
concerns does not make the strike race-neutral. 
A Black person's residence in a primarily Black neighborhood, for
example, has been held to be a proxy for race, despite some white people living
there, too.  See, e.g., United States v.
Bishop, 959 F.2d 820, 822 (9th Cir. 1992) (impermissible to strike Black juror
because he lived in Compton).  As amici
Lawyers for Civil Rights, and others, put it in their brief, a "critical
evaluation of the[se] . . . justifications . . . shows that they were
based on Juror No. 3’s [race] . . . and thus were not
race-neutral."
      We may not ignore as judges what we know
as people:  A person of color who shares
a murder defendant's race is far more likely to express concern about an
all-white jury venire than anyone else. 
Likewise such a person is far more likely to take and express offense at
a vicious stereotype about his own people. 
Thus, although the prosecutor said that the juror "seemed upset or
offended in some way about the particular question, No. 18, 'Do you believe
that Dominicans or Puerto Ricans are more likely than members of other ethnic
groups to commit crimes?'" we know why the juror was upset.  This is a racist stereotype that has led to
violence against and injustice toward Puerto Ricans in the United States, and
the juror was Puerto Rican.
"The growing
Hispanic and Latino population . . . has encountered varied sources
of discrimination.  See, e.g.,
Commonwealth v. Buckley, 478 Mass. 861, 878 (2018) (Budd, J., concurring)
(Hispanic drivers are stopped more often by police than Caucasian drivers);
Bradley v. Lynn, 443 F. Supp. 2d 145, 148, 149 (D. Mass. 2006) (finding
disparate and adverse impact on Hispanic candidates for entry-level firefighter
positions); Kane v. Winn, 319 F. Supp. 2d 162, 179 (D. Mass. 2004) (citing
statistics that Latinos are overrepresented in country's prison population, and
'Latino youths are incarcerated at twice the rate of [Caucasian] American
youths')."

Commonwealth v.
Colon, 482 Mass. 162, 179-80 (2019).  The
Commonwealth's objections were thus not race neutral.
      Oddly, the Commonwealth does not even
discuss, much less defend, these proffered reasons, relying instead entirely on
Commonwealth v. Williams, 481 Mass. 443 (2019). 
But that is not a Batson-Soares case at all and says nothing about
strikes of jurors of color on grounds that are race-based.  In fact, nothing in that case or its record
indicates that the juror who stated her opinion that the "system is rigged
against young African American males" was a person of color.  Williams, at 449.  Putting aside that juror no. 3 did not say
what the juror in Williams said, the actual holding of Williams is that the
judge erroneously struck the juror for her "inability to disregard [her]
life experiences and resulting beliefs." 
Id. at 452.  She said those
beliefs were formed when "[she] worked with . . . low income
youth in a school setting.  [She] worked
a lot with . . . teenagers who were convicted of drug
crimes."  Id. at 444.  In dictum, the court did say that the juror
might nonetheless have been struck peremptorily by the Commonwealth.  Id. at 453-454.  But it certainly did not opine on whether
that peremptory strike would survive a possible Soares claim if the juror were
a person of color.[5]  There was in fact
no claim made in the trial court or the Supreme Judicial Court that the juror
was struck by the judge on the basis of her race, which, again, was not even
indicated in the record.  Indeed, the
Supreme Judicial Court said that "[i]n contrast [to Soares], here, the
prospective juror was not struck due to being a member of a discrete
group."  Id. at 456.  Williams thus does not "indicate that
striking a juror based on the juror's expressed belief that the criminal
justice system is rigged is not racially discriminatory on its face."  Ante at   
n.5.  It couldn't, because we
don't even know the race of the juror. 
Williams is thus literally irrelevant to this case.
      As to the court majority, although it
purports to recognize that a strike motivated even in part by race is
impermissible, rather than addressing whether the two reasons described above
are as a matter of law race neutral, it says my assessment of them takes them
"out of their larger context," and thus misses the "thrust"
of the prosecutor's concerns, which were about the juror's responses throughout
voir dire "writ large."  Ante
at        . 
This unjustified, newly-minted approach for assessing reasons
articulated by the prosecutor amounts to little more than an obfuscatory way of
saying the court majority without warrant will ignore some of the actual,
specific justifications for the strike explicitly articulated by the
prosecutor.
      The actual "context" in which
these justifications were given was that the prosecutor was asked to justify on
a race-neutral basis her peremptory strike of a Puerto Rican juror.  The prosecutor articulated, as required, her
reasons for the strike.  Two were race
based.
      That the majority concludes that the
peremptory strike was nonetheless permissible, first by eliminating from our
analysis the foundational requirement that the prosecutor's justifications be
race neutral, and then by the use of verbal formulae that amount to asserting
without any legal or factual basis that the prosecutor really didn't mean what
she said, is disappointing.  It seems to
me like less than should be expected of our court.
      The court majority repeatedly states that
the juror was struck because of the Commonwealth's "concern that [the]
juror [could not] be fair and impartial." 
Ante at        .  Of course the judge, who herself found the
juror impartial, did not say that in her finding.  But in any event every race-based strike is
borne of what might be characterized a "concern about" the juror's
partiality.  The party exercising the
strike thinks the juror will vote in favor of the other side because of the
juror's race.  See, e.g., Thompson v.
United States, 469 U.S. 1024, 1026 (1984) (Brennan, J., dissenting) (before it
was overruled by Batson, Swain v. Alabama, 380 U.S. 202, 221 [1965], had
"h[eld] that the State may presume in exercising peremptory challenges
that only white jurors will be sufficiently impartial to try a Negro defendant
fairly").  The court majority says
that "[i]n light of the [juror's] answers, the prosecutor may well have
been concerned that juror no. 3 would view the case, not through the lens of
the facts presented and the law provided, but through the lens of the race of
the defendant and perceived unfairness of the system."  Ante at
       . 
If concern about an all-white jury venire trying a Latino person, or
taking offense at a poisonous stereotype of Puerto Rican people means one
cannot be fair in a trial of a Latino defendant, then all jurors of Puerto
Rican dissent will be subject to peremptory strikes.  
      Under art. 12, the trial judge erred in
allowing the Commonwealth's peremptory challenge of juror no. 3.  Therefore, the defendant's conviction should
be vacated and the case remanded for a new trial.  With respect, I dissent.

footnotes

[1] We
acknowledge the amici brief submitted by Lawyers for Civil Rights, the
Massachusetts Association of Hispanic Attorneys, the Jewish Alliance for Law
and Social Action, and Citizens for Juvenile Justice.

[2] As indicated,
the jury convicted the defendant of felony-murder in the second degree, with
the predicate felony being unarmed assault with intent to rob.  They acquitted the defendant of murder in the
first degree, armed home invasion, and armed assault with intent to rob.

[3] The defendant
was Hispanic and juror no. 3 also identified as Hispanic, as he made clear
during his voir dire.

[4] As the trial
judge ruled on the ultimate question of whether the Commonwealth's peremptory
challenge was discriminatory, her findings as to whether the defendant showed a
prima facie case of discrimination are "no longer of
consequence."  See Commonwealth v.
Carleton, 36 Mass. App. Ct. 137, 141, S.C., 418 Mass. 773 (1994).

[5] The dissent
contends that our citation to Williams is inapt because Williams is not a
Soares case, and does not discuss the race of the prospective juror.  The dissent states that the Williams court
"certainly did not opine on whether that peremptory strike would survive a
possible Soares claim if the juror were a person of color."  Post at
       (Rubin, J., dissenting).  But Williams does indicate that striking a
juror based on the juror's expressed belief that the criminal justice system is
rigged is not racially discriminatory on its face (i.e., is race neutral); the
relevance of Williams is that the court's opinion indicates that the reason
given would have been an adequate basis for a peremptory challenge --
regardless of the race of the prospective juror.

[6] There also
was no error in the judge's finding that the prosecutor's reasons were genuine.
The trial judge is uniquely positioned to make a determination as to
genuineness, while the appellate courts are not.  See Maldonado, 439 Mass. at 466 ("while
appellate courts may be equipped to some extent to assess the adequacy of an
explanation, they are particularly ill-equipped to assess its
genuineness").  Here the defendant
urges us to conclude on appeal that the prosecutor acted from discriminatory
intent, and that the intent was shown by alleged misstatements of the record
and differential questioning of juror no. 3. 
Based on our review of the prosecutor's statements, we perceive no clear
error in the trial judge's finding that the prosecutor's justifications were genuine.

[7] The
prosecutor's comments appear to be directed in part at the juror's demeanor
throughout questioning, and the prosecutor referenced specific examples of the
juror's demeanor several times in the reasons she stated to the judge.  As noted, the judge found these reasons
genuine.  The judge correctly noted that
the Commonwealth may "make a decision on the basis of body language and
other observable characteristics of a potential juror, that they may interpret
differently from the [c]ourt."  See
Commonwealth v. Caldwell, 418 Mass. 777, 779 (1994) ("A juror's demeanor
and reactions during the voir dire may constitute a sufficient basis for
peremptory removal . . . . However, the prosecutor must
have articulated, on the record, an explanation for the challenge that was not
vague and general").  See also
Williams, 481 Mass. at 453 ("Judges are expected to, and indeed must, use
their discretion and judgment to determine whether a prospective juror will be
fair and impartial based on verbal and nonverbal cues" [emphasis added]).
      Here, the prosecutor's references to
demeanor were not vague and general, but involved specific examples of how the
juror responded to particular questions. 
These details allowed the judge to evaluate the genuineness of the
reasons given.

[8] The dissent
nevertheless claims that the question whether a proffered justification is
"race neutral" is reviewed de novo, citing primarily Federal cases
dealing with the second "step" of the Federal Batson analysis.  But under the Federal analysis that second
step review is quite limited -- an appellate court reviews counsel's stated
reasons only for whether those reasons are racially discriminatory (that is,
not "race neutral") on their face. 
The United States Supreme Court has stated the test thusly:    
"A neutral
explanation in the context of our analysis here means an explanation based on
something other than the race of the juror. 
At this step of the inquiry, the issue is the facial validity of the
prosecutor's explanation.  Unless a
discriminatory intent is inherent in the prosecutor's explanation, the reason
offered will be deemed race neutral." 
(Emphasis added.)
Hernandez v. New
York, 500 U.S. 352, 360 (1991) (plurality opinion).  See Purkett v. Elem, 514 U.S. 765, 767-768
(1995) (quoting with approval the Hernandez plurality opinion and stating
"[t]he second step of this process does not demand an explanation that is
persuasive, or even plausible").  No
case suggests a more searching de novo review under Massachusetts law.
      While the dissent appears to be arguing,
at least in part, that it considers the prosecutor's stated reasons to be
discriminatory on their face, that position cannot be squared with the tests,
or the holdings, of Hernandez and Purkett. 
The prosecutor's stated reasons here addressed juror no. 3's
impartiality as evidenced by his answers and demeanor; the prosecutor's
statements cannot be said to demonstrate discriminatory intent on their face.

[9] The dissent's
reliance on Commonwealth v. Prunty, 462 Mass. 295 (2012), is misplaced for
precisely this reason.  Prunty is a case
where the trial judge declined the defendant's peremptory challenge of a juror,
finding that defense counsel's reasons were in fact based on race.  Id. at 302. 
In affirming, the Supreme Judicial Court emphasized the need to defer to
the trial judge's findings -- as we do here. 
See id. at 309-314.

[10] As is
reflected in the transcript, the jury venire was not "all-white," and
it appears the petit jury was not either, although the record as to the race of
the jurors is by no means complete.

[11] There are
places where the dissent seems to be suggesting that the prosecutor's reasons
were not "race neutral" for the simple reason that the prosecutor
referenced answers by the juror that discussed race (ethnicity).  The dissent's reasoning in this regard is
faulty.  If, as here, a juror (or a
questionnaire) raises issues of race or ethnicity, the prosecutor is not
precluded from addressing the juror's statements, as they might bear on the
juror's ability to be impartial.  As
indicated, the actual question for the judge is whether the strike was
motivated by, or "based on," race. 
See Flowers, 588 U.S. at 303; Burnett, 418 Mass. at 771.  The fact that a party references issues of
race raised by a juror during the colloquy of course does not ipso facto render
the party's reasons discriminatory, or not "race neutral."  As discussed in note 8, supra, "race
neutral" simply means an explanation that is not based on (motivated by)
the race of the juror; it is not some new and different standard for
determining whether a peremptory strike is appropriate.

footnotes for concurring

[1] See Batson v.
Kentucky, 476 U.S. 79, 89 (1986) ("the Equal Protection Clause forbids the
prosecutor to challenge potential jurors solely on account of their
race").

[2] See
Robertson, 480 Mass. at 390 (reviewing "judge's finding that there was no
prima facie showing of a discriminatory pattern for an abuse of
discretion"); Jones, 477 Mass. at 325 (determining judge abused her
discretion in finding that defendant made necessary prima facie showing of
discrimination); Commonwealth v. Issa, 466 Mass. 1, 11 (2013) (concluding
"judge did not abuse his discretion in finding that the defendant had
fallen short of making a prima facie case of bias"); Commonwealth v. Lugo,
104 Mass. App. Ct. 309, 313 (2024) (reviewing "judge's decision relative
to a peremptory challenge for an abuse of discretion"); Commonwealth v.
Carvalho, 88 Mass. App. Ct. 840, 843 (2016) (determining judge did not abuse
his discretion in finding that "a prima facie showing of impropriety was
made").

[3] Other States
have eliminated step one of the analysis in order to combat race-based
peremptory challenges.  Some have gone
further and created presumptively invalid reasons for a peremptory
challenge.  This concurrence merely
suggests eliminating step one.  It does
not attempt to go further as other States have done.
      Washington adopted a court rule listing
presumptively invalid reasons for a peremptory challenge.  See Wash. Rule of General Application 37(h)
(2018).  Subsequently, California passed
legislation with the same sentiment:  to
provide a list of reasons "presumed to be invalid" for a peremptory
challenge.  See Cal. Civ. Pro. Code
§ 231.7(e) (effective 2020).  In
2022, the New Jersey Supreme Court amended its rules of court to include a list
of "reasons [that] are presumptively invalid" as a justification for
a peremptory challenge.  N.J. R. 1:8-3A
(2022 comment).

footnotes for dissenting

[1] See Foster v.
Chatman, 578 U.S. 488, 513 n.6 (2016) (noting that Supreme Court had "not
previously allowed the prosecution to [prevent invalidation of a strike by]
show[ing] that 'a discriminatory intent [that] was a substantial or motivating
factor' behind a strike was nevertheless not 'determinative' to the
prosecution’s decision to exercise the strike" [citation omitted]);
Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252,
265-266 (1977) (equal protection clause, which prohibits intentional racial
discrimination, "does not require a plaintiff to prove that the challenged
action rested solely on racially discriminatory purposes"); Commonwealth
v. Long, 485 Mass. 711, 726 (2020) (where traffic stop is "motivated at
least in part by race" it "violate[s] the equal protection principles
of arts. 1 and 10" of Massachusetts Declaration of Rights); id. at 736
(Gants, C.J., concurring) ("it is the unanimous view of this court that
. . . judges should suppress evidence where a motor vehicle stop is
motivated, even in part, by the race of the driver or passenger").

[2] The Supreme
Judicial Court has abandoned any distinction between discrimination on the
basis of race and discrimination on the basis of ethnicity.  See Commonwealth v. Colon, 482 Mass. 162, 179
(2019).

[3] Without
specifying what they were, the Commonwealth does also say in its brief
conclusorily that the prosecutor "articulated several justifiable,
non-race-based reasons for Juror No. 3 to be excused.  The trial judge properly exercised her
discretion in accepting these proffered justifications and allowing the
peremptory challenge."

[4] The
transcript indicates that, although two Latino jurors were among the venire on
the first day of jury selection, on the second day, when juror no. 3 was
present, he was the only Latino person in the venire.

[5] It thus did
not "indicate[] that the reason given would have been an adequate basis
for a peremptory challenge -- regardless of the race of the prospective
juror," ante at n.5, if the peremptory strike was challenged under Soares.